## COUNTY OF KENNEBEC.

### READ *versus* DAVIS.

One, contracting to pay money, upon receiving a payment to himself from a third person, does not defeat or diminish his liability by a surrender of his authority to receive such payment to himself.

His liability, however, is at an end, if by means of the insolvency of such third person, or for any other cause, the contractee could not be damnified by the surrender.

In such a case the burden of proving, that the contractee could receive no damage from the surrender, is upon the contractor.

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

ASSUMPSIT. The following facts appeared in evidence. —

In 1838, the plaintiff, being indebted to the defendant, conveyed to him a small farm. This conveyance, though intended only for security, was by an absolute deed. The plaintiff afterwards obtained ownership of two small adjoining lots worth $200, a wood lot and an orchard, convenient to be owned in connection with the farm. On June 14, 1843, the indebtment amounted to $359,52. The plaintiff, having

permission to sell the farm, out of which to raise money for paying the debt, entered into a negotiation with Lauriston Stetson, which resulted; Nov. 13, 1843, in an arrangement, as follows, viz. — The two small lots were conveyed to the defendant, who thereupon gave to Stetson an obligation to convey to him the whole of the land, on condition that Stetson should pay him six hundred dollars, according to notes then given, at six annual payments, with interest ; and the defendant gave to the plaintiff the note upon which this suit is brought, being a note of $167,50, and interest payable in four years, " provided and as soon as Lauriston Stetson should pay the defendant" $400.

Stetson went into the occupation of the land, and at different times made payments to the defendant, amounting to about $110. In the fall of 1846, Stetson left the State, and made known to the defendant that he did not wish to keep the farm, and would pay nothing more toward it. Thereupon the bargain between them was rescinded, without the consent or knowledge of the plaintiff. The defendant's bond to convey the land, and Stetson's notes for the $600, were all canceled. At that time, Stetson had no attachable property, and in Nov. 1847, when $400 of notes had become fully payable, he was unable to pay that sum, but at the end of the six years, that is, at the expiration of the last note, he could have paid the amount of all the notes, and had attachable property in Massachusetts, more than sufficient to secure them. In 1849, the defendant admitted that he had received from Stetson and from one Bates, who had occupied the land, and for damage done by locating the rail road upon it, nearly $300.

In 1851, the defendant received of one Cook $369,26, for which he gave him a bond to convey to him the original farm.

The parties then agreed, that the Court should draw inferences as a jury might, and render judgment upon nonsuit or default, as the law should require.

*Vose*, for the plaintiff.

The legal construction of the note is, that it should be

paid in four years, if Stetson should then have paid so much as $400; otherwise, as soon as he had paid so much.

It was founded upon a just consideration.

It was the defendant's duty to receive the money on the notes from Stetson. Instead of so doing, he gave up and canceled them, taking back his own bond to convey the land. This is to be deemed a *payment* of the whole $600.

But if not a *payment*, it was a transaction by which the defendant precluded himself from all right to receive the money on the notes. The plaintiff's rights could not be defeated by any such arrangement.

When the defendant voluntarily, and without consent of the plaintiff, released Stetson from the obligation to pay the notes, he became *immediately* liable to the plaintiff. This suit, however, was not brought until after the six years expired. The defendant holds the plaintiff's property and cannot be allowed, by such a stratagem, to avoid paying for it. The proof clearly shows, that the notes against Stetson were good and collectable, and there is neither law nor equity in the defence.

*May*, for the defendant.

We make no objection to the legal construction, given by the plaintiff to the note in suit. But the contingency upon which it was to be paid, even according to that construction, has not occurred.

The note was payable to the plaintiff, only upon Stetson's *payment* to the defendant of $400; not upon Stetson's mere *liability* to pay. The defendant was under no obligation to incur expense in attempting to collect it. The question then is, has Stetson paid the $400? We answer in the negative. The payment was to be made *under the bond* and upon the notes for the purchase of the land. Before Stetson could claim a conveyance, he was to pay the notes. He was not to buy up the notes by a cancellation of the bond. Until he paid $400, *upon the notes*, the plaintiff had no claim for money. But Stetson never paid. He failed to pay, and how can a failure to pay be considered a payment?

The rescission of the contract between Stetson and the defendant was about three years after the notes were given; interest on them had amounted to $108; whereas the payments were only $110. The bond had been forfeited, for the obligee had not paid either of the early installments, and he then refused to pay the notes or take the land. At that time he had not the means to pay. The notes, then, might well be considered worthless. These worthless notes the defendant exchanged for a bond, which by ceasing to have any vitality had become equally worthless. Is it not a mockery of justice to call that transaction a payment of $400? Neither in fact nor by any pretence of evidence, did the plaintiff, from any and all sums, receive so much as $400. The utmost extent of pretence is to the amount of not quite $300.

The two small pieces of land were placed in the defendant's hands merely in trust to be held for the plaintiff in case Stetson should fail to pay. If Stetson paid, all the land was to be conveyed to him by the defendant, who was also to pay to the plaintiff the note now in suit. The plaintiff was to be paid so soon as Stetson had paid four out of the six hundred dollars, and for the remaining $200, the defendant would hold security on the land. Thus, as Stetson in fact failed to pay, the two small lots were held by the defendant in trust, the whole consideration having come from the plaintiff, and equity would decree a conveyance to him by the defendant.

In any event, the plaintiff was secured. He was to have his money, if Stetson paid so much as $400. If Stetson did not pay so much, the plaintiff was entitled in equity to the two lots. Thus, Stetson having failed to pay, the plaintiff's remedy is in equity for the land, and this action upon the note is not maintainable.

TENNEY, J. — The counsel of the respective parties, in their arguments, agree in the construction of the note in suit, that the defendant promised the plaintiff to pay him the amount thereof, in four years, if Laureston Stetson, should then have

paid the defendant the sum of $400. If at that time, the sum of $400 should not be paid, payment was to be made on the note in suit, as soon as that sum should be paid by Stetson, afterwards.

The note purports to be for a valuable consideration; and the facts in the case show, that on April 17, 1838, the plaintiff conveyed his farm to the defendant, as security for certain indebtedness to him; that on June 14, 1843, that indebtedness was the sum of $359,52. Afterwards the plaintiff negotiated with Stetson for a sale of the farm, worth $400, and two other parcels of land worth $200, which the plaintiff by his own means, had procured to be conveyed to the defendant as necessary appendages of the farm. In pursuance of an arrangement between the plaintiff and Stetson, the defendant gave to the latter a bond, to convey to him all this real estate on the payment of six hundred dollars, in yearly payments of one hundred dollars and interest annually, according to his six notes. The bond, the notes of Stetson, and the note in dispute, were all given on Nov. 23, 1843, and are parts of the same transaction. Before August, 1849, and previous to the institution of this suit, which was Nov. 17, 1849, the defendant had received in payments from Stetson, and from the income of the land, described in the bond, including a sum from the Androscoggin and Kennebec Rail Road Company, as the consideration of a parcel of the farm conveyed to them, about the sum of $300. On Oct. 3, 1851, the defendant, in consideration of the sum of $369,26, previously paid, gave to one Cook a bond to convey the farm to him, not including the other two parcels described in the bond to Stetson. In Dec. 1846, the defendant not insisting upon a forfeiture of Stetson's right under the bond, but upon his request, voluntarily, surrendered to Stetson his six notes, and the bond to him was canceled, without the consent or knowledge of the plaintiff.

Stetson did not pay the sum of $400, within four years of the date of the note in suit, and was relieved of all liability to do so, in about three years, by the act of the defendant.

And it is insisted by the plaintiff, that the payment has failed to occur through the fault of the defendant. If this proposition is established by the facts, on the application of a well settled principle of law, the note is to have the effect, which would have been given to it by a fulfillment of the condition.

By the terms of the note, the defendant was not to be exonerated from its payment by the failure of Stetson, to perform promptly his several promises; on the other hand, it seemed to be apprehended, that the amount of $400 might not be paid within four years; and to secure the plaintiff from risk, of losing his claim, against the defendant, it was not only stipulated that, if Stetson should pay $400 in four years, without reference to the time, when he was bound to pay each hundred dollars, and interest on the whole annually, the condition of the defendant's note would be performed; but the plaintiff was entitled to the amount of his note, whenever after the period of four years, that amount should be paid by Stetson.

Stetson's notes being given up, upon a surrender of his rights under the bond, before the time, when these partie*s*, according to the agreement in the note, contemplated that Stetson had the right to pay, and would pay his notes, the defendant has done that, which would of itself prevent the fulfillment of the condition; and if he shows that by adhering to the contract between himself and Stetson, the fulfillment of the condition, would have been impossible, it is not perceived, that the plaintiff has been the loser. But he certainly disregarded the understanding between himself and the plaintiff, implied by the whole transaction, and in order to relieve himself from liability, the burden is upon him to show, that the abrogation of his contract with Stetson has not been, and could not have been injurious to the plaintiff. This he has failed to do. But it is shown on the other hand, that Stetson, though unable to pay the amount of $400, in four years, had the means of paying the entire consideration of all the land described in the defendant's bond to him, at the maturity of the note last payable. Under this evidence

he can with no propriety contend, that the payments would not have been made, in fulfillment of the condition of his own note, when he has by his own free act, totally unauthorized by the plaintiff, destroyed the means of ascertaining, whether the condition would have been fulfilled, but has rendered performance absolutely impossible, under the agreement.

It is contended for the defendant, that the plaintiff has mistaken his remedy ; and that as he paid for the two parcels of land near the farm, which he caused to be conveyed to the defendant, he is entitled by a suit in equity against the defendant to obtain a title thereto. We are not now called upon to decide in advance such a question. But it is manifest, that the defendant had a valuable and ample consideration for the note, which he gave the plaintiff. He has now that consideration in his own hands for which, under a contract, as yet executory, he has received a sum, which, with other receipts of money on account of the farm, is a sum equal to that, which if received of Stetson, would have been a performance of the condition. He has wrongfully done that, which relieved Stetson from all obligation to make the payment, that would have been a performance of the condition, and not having shown, that such payments would not have been made, it is not improper to say, that the rescission of the contract between him and Stetson has precluded the performance of the condition. *Defendant defaulted.*

Shepley, C. J., and Howard, Rice and Appleton, J. J., concurred.