FARRELL, Respondent, vs. PHILLIPS, Appellant.

*October 27—November 12, 1909.*

(1, 2) *Larceny: Negotiable note: Felonious intent: Taking by trick.* (3, 4) *Malicious prosecution: Probable cause: Special verdict: Omitted finding: Appeal: Presumptions.* (5) *Witnesses: Credibility: Conviction of contempt of court.*

1. Although the maker of a negotiable note had perhaps a right to rescind, for failure of consideration, an entire contract as part of which such note was executed and delivered, yet, until such rescission at least, the note was the property of the payee and was subject of larceny.
2. A felonious intent to deprive the possessor of the thing taken being essential for larceny, if one openly takes property under the honest though mistaken belief that he himself has title,

the act ordinarily will not be larceny; but the claim of title must be at least colorable and be made in entire good faith. A taking by artifice or fraud or accompanied by acts of concealment will raise a strong inference of felonious intent.

3. In an action for a malicious prosecution of plaintiff for larceny of a note, it appeared that the note was given by plaintiff to defendant as part of an entire contract providing for the renting of a building and assignment of a liquor license by defendant to plaintiff; that defendant had no such license; and that plaintiff, without rescission of the contract for failure of consideration, had by a trick got the note from defendant's possession and carried it away. Held, that defendant had probable cause for the prosecution.

4. In an action for malicious prosecution the special verdict did not contain any finding as to whether or not there was probable cause for the prosecution, but judgment was rendered thereon for plaintiff. Held, under sec. 2858m, Stats. (Laws of 1907, ch. 346), the case must be treated on appeal as though the court had found as a fact that there was lack of probable cause and appellant had excepted to the finding.

5. Contempt of court, either civil or criminal, is not a "criminal offense" within the meaning of sec. 4073, Stats. (1898), which permits "conviction of a criminal offense" to be proved to affect the credibility of a witness, either by the record or by cross-examination.

6. Where, under sec. 4073, Stats. (1898), the credibility of a witness is sought to be affected by proving by the record his conviction of a criminal offense, such proof should consist of the record of the conviction and judgment alone, and not the full record of the case.

7. A single isolated act of contempt of court committed twelve years prior to the trial does not properly come within the rule which permits, upon cross-examination, inquiries into the previous life, habits, and occupation of a witness, as tending to throw light on his veracity.

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, Circuit Judge. *Reversed.*

Phillips commenced a criminal prosecution against *Farrell* for the larceny of a promissory note, and, the prosecution being dismissed by the examining magistrate, *Farrell* brought this action for malicious prosecution. *Phillips's* defenses were that the plaintiff actually committed the larceny and that he (*Phillips*) acted on the advice of counsel.

Most of the facts were undisputed. The defendant, *Phillips,* in April, 1908, owned a building in the city of Oconto which he desired to rent for saloon purposes. Prior to May 16th he had deposited $200 with the city clerk and applied for a license for the balance of the license year, but had received no license because the city council had not met. On the 16th of April he met *Farrell,* and after some talk an arrangement was made by which *Farrell* was to lease the building and operate a saloon in it at an agreed rental, and was to give his note indorsed by a responsible indorser for half the city and government license, amounting to $112, *Phillips* paying the other half. At this point arises the only serious dispute as to the facts. *Farrell* claimed that *Phillips* said he already had the city license and would assign it to him, while *Phillips* claims that he only told *Farrell* that he had applied for the license and deposited the money and would have it issued to him (*Farrell*). On the same day the oral arrangement was so far carried out that the lease was drawn in duplicate and a copy delivered to each party, a negotiable note for $112, with the indorsement of one Dr. Watkins, was signed by *Farrell* and delivered to *Phillips,* and the key of the building delivered to *Farrell.* Upon the following morning *Farrell* called at *Phillips's* house and asked *Phillips* to let him see the note to see if it was all right, and *Phillips* handed him the note, and *Farrell* secretly and without *Phillips's* knowledge substituted for the indorsed note his own note, without indorsement, and handed it to *Phillips,* who did not discover the substitution until afterwards. *Farrell* claimed that he had ascertained that *Phillips* had no license, and that he was afraid that *Phillips* was not going to deal fairly with him, and so he determined to get his note back and call the deal off. Nothing further was done towards carrying out the contract. *Farrell* left Oconto the next day, and *Phillips* immediately made sworn complaint against him for larceny of the note.

The jury returned a special verdict finding: (1) That *Phillips* maliciously procured *Farrell's* arrest; (2) that the agreement between the parties was that *Phillips* would assign to *Farrell* a license which he then claimed to have, and that this agreement was the consideration for the note in question; (3) that *Phillips* did not make a full, fair, and honest statement of the material facts to an attorney before the prosecution commenced; (4) that *Phillips* did not sincerely and in good faith believe when he swore out the warrant that the plaintiff was guilty of larceny; and (5) that plaintiff's damages amounted to $2,335.77, of which sum $2,000 were punitory damages.

The court gave defendant the option to consent to judgment for $935.77 within twenty days, and, in the event of failure to exercise the option, gave plaintiff the option to take judgment for $635.77, and ordered that if neither option should be exercised the verdict be set aside and a new trial granted. The defendant did not exercise its option, but the plaintiff chose to take judgment for $635.77, and from that judgment the defendant appeals.

For the appellant there was a brief by *F. X. Morrow* and *Sheridan & Evans,* and oral argument by *W. L. Evans.*

*Allan V. Classon* and *D. D. Conway,* for the respondent.

WINSLOW, C. J. In order to sustain an action for malicious prosecution it must appear: (1) That the defendant commenced a prosecution; (2) that it has terminated in the plaintiff's discharge; (3) that it was commenced maliciously and (4) without probable cause. In this case the first two facts were admitted, and the contest was as to the third and fourth propositions. By their verdict the jury found malice, but did not find lack of probable cause, so the verdict on its face seems to omit an essential fact.

It appears that the trial judge considered that when the

jury, by its second finding, found that the agreement was that *Phillips* was to assign to *Farrell* a license which he then had, in consideration for the indorsed note, it was in effect found that the note was without consideration and of no value, and hence that no larceny was committed in taking it, and that if there was no larceny then there could be no probable cause. We are unable to agree with this conclusion. The note had been fully executed and delivered. It was part of an entire contract which included the rental of the building as well, and cannot be considered as standing alone or based upon an entirely separate consideration. It was negotiable on its face, and there was nothing to prevent its holder from negotiating it, thus relieving it from the defense attempted to be made. It was property, and it was the defendant's property, at least until a rescission of the contract had been made. The fact that there was a defense claimed to exist which might be successful at the end of a lawsuit did not deprive it of its character as property nor justify the maker in taking it from its owner by force or stratagem. If such were the rule, the mission of the courts in the settlement of disputes as to the ownership of property would seem to be at an end. These propositions do not seem to call for the citation of authority in their support. They are self-evident. So the verdict still remained insufficient because it nowhere found the want of probable cause. At this point, however, sec. 2858*m*, Stats. (Laws of 1907, ch. 346), comes in. This section provides that:

"Whenever any special verdict shall be submitted to a jury, and there is omitted therefrom some controverted matter of fact, not brought to the attention of the trial court by request, but essential to sustain the judgment, such matter of fact shall be deemed determined by the court in conformity with its judgment, and the neglect or omission to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto* and a consent that such omitted fact

be determined by the court.   The finding or determination of such omitted fact by the court may be reviewed on appeal without any exception thereto."

No claim is made that this law is unconstitutional or ineffective for any other reason, and we have discovered no reason why it should not be enforced as it reads.   We must therefore treat the case as though the court had found as a fact that there was lack of probable cause and the appellant had excepted to the finding.

Is the finding against the clear preponderance of the evidence?   We think it is.   Upon the plaintiff's own version of the transaction by which he obtained possession of the note we think it affirmatively appears that the defendant had probable cause to believe the plaintiff guilty of larceny.   As we have seen, the note in question was the property of the defendant and had value.   The plaintiff's own story shows that without rescinding or attempting to rescind the contract, of which the note was a part, he took the note from its owner's possession by a fraudulent and secret trick and returned it to its indorser.   Of course the felonious intent to deprive the possessor of the thing taken must be present in order to constitute larceny, and, if a man openly take property under the honest though mistaken belief that he himself has title, the act ordinarily at least will not be larceny.   But in order that there should be an acquittal on this ground it is essential that the claim of title be at least colorable and that it be made in entire good faith.   If the taking be not open, but be accomplished by artifice or fraud, or be accompanied by acts of concealment such as were present here, the inference will be strong that the felonious intent was present.   1 Wharton, Crim. Law (10th ed.) §§ 883, 884; *State v. Bond,* 8 Iowa, 540.

Upon the facts admitted here no court would be justified in taking the question of defendant's guilt from the jury, and a verdict of guilty could not be set aside.   It follows

necessarily that the defendant had probable cause to com-
mence the prosecution for larceny, and that the finding to the
contrary, implied by the statute, must be set aside as con-
trary to the clear preponderance of the evidence.

While this necessitates reversal of the judgment and a di-
rection to enter judgment dismissing the complaint, we deem
it proper to notice a ruling upon evidence which was fully
argued.   Upon the defendant's cross-examination he was
asked whether he had not been convicted and fined for con-
tempt of court twelve years previously, during the trial of
an action to which he was a party; such contempt consisting
in treating a juryman in a house of ill-fame.   The defend-
ant not being willing to admit the fact that the alleged treat-
ing was done in a house of ill-fame, the plaintiff was allowed
to read in evidence the entire record in the contempt proceed-
ing, from the complaint to the judgment, as a part of the
cross-examination.   We think this was erroneous for at least
two reasons: *First,* the statute allows the "conviction of a
criminal offense" to be proven to affect the credibility of a
witness, either by the record or by cross-examination of the
witness (sec. 4073, Stats. 1898), and conviction of a con-
tempt of court, either civil or criminal, is not a conviction of
a "criminal offense," as very plainly appears from the pro-
visions of sec. 2569, Stats. (1898), which expressly provides
that persons punished for contempt even criminally shall
still be liable to indictment or information for the offense.
*Second,* even if it were proper under the section named to
prove conviction for contempt of court by the record, the
proof should consist of the record of the conviction or judg-
ment alone, and not the full record of the case, which may
well contain matters and charges derogatory in their nature,
well calculated to prejudice the jury, but which in fact are
no part of the judgment and may never have been proven.

It is said that the evidence was proper under the general
rule that upon cross-examination inquiries into the previous

life, habits, and occupations of a witness may be properly allowed in the discretion of the trial court, as tending to throw light on his veracity. *State v. Nergaard*, 124 Wis. 414, 102 N. W. 899. The line is sometimes difficult to draw in this field, but we are satisfied that a single isolated act of contempt of court, committed twelve years prior to the trial, does not properly come within the rule. It can hardly be said to give character to the life of the witness, and furthermore its remoteness in point of time should bar its admission.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint.