CASE, Appellant, vs. BEYER and another, Respondents.

*March 18—April 5, 1910.*

**(1, 5)** *Appeal: Review: Undisputed facts: Findings by the court.* **(2-4)** *Bills and notes: Title: Verdict construed: Rights of purchaser: Contracts: One party preventing performance by the other.*

1. Undisputed facts are available in support of a judgment without a finding of the jury thereon.
2. The undisputed fact that title to the note in suit passed to plaintiff is not negatived by findings by the jury that he did not purchase the note prior to maturity in good faith and that when he procured it from the payee he had knowledge of an agreement between the payee and the makers.
3. Where one party to a contract, though ready and willing to carry it out, is prevented from so doing by default of the other party, the latter cannot take advantage of such failure of performance.
4. Where by agreement a note is to be returned to the makers unless a third person performs a certain contract, and the makers by their own default prevent such performance, the holder of the note may recover thereon even though he purchased it with knowledge of such agreement.
5. Findings which, under sec. 2858*m*, Stats. (Laws of 1907, ch. 346), the trial court will be presumed to have made upon questions not submitted to the jury, are subject to review on appeal without exception, and will be set aside if against the clear preponderance of the evidence.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This action was brought by the plaintiff against the defendants to recover upon a promissory note executed by defendants, payable to the order of one Andrew D. Agnew, for $425. On the back of the note appears the following: "I hereby guarantee the collection of the within note. Andrew D. Agnew." "For Collection. *Spencer L. Case.*" The defendants answered severally, admitting the execution and delivery of the note, but denying that the plaintiff was the owner and holder thereof, and further alleging that if he

were such owner and holder he took the note with knowledge
of a certain agreement between defendants and Agnew, the
payee, that it was to be returned to defendants in case one
Lucy Anson failed to consummate a certain contract be-
tween her and the defendants, which agreement made by
Agnew is as follows:

"Milwaukee, July 25, 1906.
"For value received, I hereby agree that in the event of
a certain contract, executed this day by and between
*J. H. Beyer, Aug. F. Kinkel* and Lucy Anson, for the erec-
tion of a building on lot 3, block 2, in Maynard & Agnew's
subdivision No. 3, in the city of West Allis, should not be
consummated by the said Lucy Anson by the execution of a
mortgage of $3,500 on said premises for the erection of said
building, then and in that event I agree to return to the said
*J. H. Beyer* and *August F. Kinkel* a certain promissory note
payable to me for $425.00, dated this date, payable Novem-
ber 1, 1906.        [Signed]        A. D. AGNEW."

The contract made between Lucy Anson and defendants
is as follows:

"Memorandum of agreement, entered into this 25th day
of July, 1906, by and between *J. H. Beyer* and *August F.
Kinkel,* parties of the first part, and Lucy Anson, party of
the second part,

"Witnesseth, that whereas, the said Lucy Anson has here-
tofore paid to one William H. Buettner, who has given re-
ceipt therefor, in the name of the West Allis Investment
Company, the sum of four hundred seventy-five dollars
($475), to apply as part purchase money on lot No. three (3)
in block No. two (2), in Maynard's & Agnew's subdivision
No. 3, in the city of West Allis, the purchase price of said
lot to be fifteen hundred dollars ($1,500), the said parties of
the first part agree to procure a conveyance of said lot from
the National Land Company to said party of the second part,
the balance of the purchase price of such lot to be paid as
heretofore provided.

"And whereas, the said Lucy Anson is desirous of having
erected on said lot a building to cost not to exceed thirty-five
hundred dollars ($3,500).

"And whereas, the said parties of the first part hereto agree to secure a first mortgage loan on said premises of thirty-five hundred dollars ($3,500) with which to erect said building, they to receive a commission of one per cent. (1 %) for securing said loan; they also to have the privilege of erecting the said building, the work to be done at a price to be determined upon as follows: The parties of the first part shall have the right to select two reputable and responsible contractors, and the second party shall have the right to select two reputable and responsible contractors for the purpose of bidding on the work, the bids to be submitted by the parties so selected for that purpose within five days from the time the plans are prepared and submitted for the building contemplated by this agreement.

"The work shall be done by the parties of the first part at the price submitted by the lowest bidder, but in case dispute arises between the parties to this agreement as to the *bona fideness* of said lowest bid, then the same to be settled by arbitration in the following manner: The parties of the first part to select one arbitrator, and the party of the second part to select one arbitrator, and in the event that these two arbitrators cannot agree, then the two thus selected to select a third, and the matter to be determined by a majority of said arbitrators, and when so decided all parties to this agreement are bound by said arbitration. Mrs. Anson to secure plans and specifications for the same, with the privilege of her own architect as to supervising the job, the ordinary building contract to be drafted giving him such power as is usual under such contracts in the city of Milwaukee.

"It is further agreed by and between the parties hereto that upon the conveyance of said lot to said Lucy Anson, and the execution of a first mortgage of thirty-five hundred dollars ($3,500), as hereinbefore provided, the said Lucy Anson will thereupon pay to the National Land Company the further sum of twenty-five dollars ($25), and will thereupon execute to the said National Land Company, or its assigns, a second mortgage upon said premises to secure the payment of the balance of the aforesaid purchase price, namely, one thousand dollars ($1,000), payable on or before three (3) years after date, in monthly instalments of not less than thirty dollars ($30) each, payable on the first day of each

and every month, from and after November 1, 1906, with interest on all deferred payments at the rate of 6 per cent. (6 %) per annum, payable semi-annually.

"It is further agreed that the building is to be erected within ninety (90) days from the date of furnishing plans and specifications by Mrs. Anson.   In case the parties of the first part do not secure a first mortgage loan at the rate of 4 per cent. (4 %) for thirty-five hundred dollars ($3,500), the party of the second part to have the option to secure her own mortgage loan.

"In witness whereof, said parties have hereunto set their hands and seals the day and year first above written.

                    [Signed]      "J. H. Beyer.    ·    [Seal.]
                                  "August Kinkel.     [Seal.]
                                  "Lucy Anson.         [Seal.]
"In presence of
      "A. D. Agnew.
      "John Toohey."

It further appears that the West Allis Investment Company, of which the defendants and one William Buettner were the officers, were also the agents for the sale of property belonging to the National Land Company, a corporation practically owned by A. D. Agnew; that Mrs. Anson had paid $475 to William Buettner, who receipted for it in the name of the West Allis Investment Company, upon the purchase of one of the National Land Company's lots; that the money was never paid to the National Land Company or to Agnew.   The giving of the note seems to have arisen out of the transaction on the purchase of the lot by Mrs. Anson and the receipting for the money by Buettner.

Upon the issues raised the case was submitted to the jury, and the following verdict returned:

"(1) Did the plaintiff purchase the note in suit prior to its maturity from A. D. Agnew in good faith, paying therefor $425 ?   A. No.

"(2) Did the plaintiff have knowledge, when he procured the note from A. D. Agnew, of the agreement, Exhibit 2, between Agnew and the defendants?   A. Yes.

"(3) Was the failure of Mrs. Lucy Anson to execute a mortgage of $3,500 for the erection of a building caused by the default of the defendants? *A.* Yes.

"(4) At what sum do you assess the plaintiff's damages? *A.* $489.17."

The plaintiff excepted to certain portions of the charge of the court to the jury. Both parties moved the court for judgment on the verdict. The plaintiff's motion was denied and the defendants' motion granted. Plaintiff excepted to the first question in the special verdict and the answer of the jury thereto, and further excepted to the order of the court denying his motion for judgment on the verdict and granting defendants' motion for judgment dismissing the complaint. Judgment was rendered in favor of the defendants dismissing the plaintiff's complaint, from which judgment this appeal was taken.

For the appellant there was a brief by *McElroy, Ferguson & Lamfrom,* and oral argument by *H. T. Ferguson.*

*William Kaumheimer,* for the respondents.

KERWIN, J. The question arises in this court whether upon the findings of the jury and the undisputed evidence the plaintiff was entitled to judgment below. No finding of the jury is necessary upon undisputed facts. It is only material controverted facts which need be submitted to the jury. *Kerkhof v. Atlas P. Co.* 68 Wis. 674, 32 N. W. 766; *Howard v. Beldenville L. Co.* 129 Wis. 98, 111, 108 N. W. 48; *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 541, 553; *Ault v. Wheeler & W. Mfg. Co.* 54 Wis. 300, 11 N. W. 545; *Berg v. C., M. & St. P. R. Co.* 50 Wis. 419, 7 N. W. 347. The fact that the title to the note sued upon passed to the plaintiff is without substantial dispute. He was therefore the owner at the time of the commencement of this action, unless the findings of the jury negative such ownership. The only finding which can be claimed in any way to affect this

question is the first, which finds that the plaintiff did not purchase the note prior to its maturity in good faith paying therefor $425. This finding does not negative the title of the plaintiff to the note, but only the *bona fides* of his purchase. This is clear from the other findings as well as the evidence. All the evidence is to the effect that the plaintiff bought the note, but the controversy on the trial was whether he bought it in good faith and paid for it without knowledge of the equities between defendants and the payee, Agnew. The jury found in answer to the second question that when plaintiff procured the note from Agnew he had knowledge of the agreement between Agnew and the defendants. So the question of the plaintiff's title to the note was not negatived by the verdict and was established by the evidence.

The third question is the one upon which the principal controversy arises. By their answer to this question the jury found that the failure of Lucy Anson to execute the mortgage mentioned in the agreement set out in the statement of facts was caused by the default of the defendants. This finding is well supported by the evidence. It is urged on the part of the plaintiff that the defendants cannot take advantage of the default caused by themselves, while on the part of the defendants it is insisted that they are entitled to stand upon the letter of the contract, and, the contract not having been carried out by Lucy Anson, they are entitled to a return of the note, and the plaintiff, being a purchaser with notice, cannot recover. The evidence shows that Lucy Anson was always ready and willing to carry out the contract on her part. The contract contemplated good faith on the part of both parties to it and performance by both parties. Until the defendants tendered performance on their part Lucy Anson could not perform, and, the failure of performance or consummation on her part being caused by the default of the defendants, they cannot profit by such default. This doctrine is well supported by authorities. *Maher v. Davis & S. L. Co.* 86

Wis. 530, 57 N. W. 357; *Danley v. Williams,* 16 Wis. 581; *Kellogg v. Nelson,* 5 Wis. 125; *Hoffman v. King,* 70 Wis. 372, 36 N. W. 25; *Williston v. Perkins,* 51 Cal. 554; *Read v. Davis,* 35 Me. 379; *Williams v. Bank,* 27 U. S. 96; *Attix, N. & Co. v. Pelan & Anderson,* 5 Iowa, 336; *Angelloz v. Rivollet,* 2 La. Ann. 652. The doctrine is well stated in *Jones v. Walker,* 13 B. Mon. 163, at page 165, as follows:

"He who himself prevents the happening or performance of a condition precedent, upon which his liability, by the terms of the contract, is made to depend, cannot avail himself of his own wrong and relieve himself from his responsibility to the obligee, and shall not avail himself, to avoid his liability, of a nonperformance of such precedent condition, which he has himself occasioned, against the consent of the obligee."

The finding of the jury upon the third question of the special verdict, in connection with the evidence, establishes conclusively that the default of the defendants, without any fault on the part of Lucy Anson, occasioned the failure of performance of the agreement between defendants and Lucy Anson. Therefore the defendants have no defense to the note in the hands of the plaintiff, notwithstanding his full knowledge of the equities existing between Agnew and the defendants.

It is argued by defendants' counsel that it must be held that the court below in awarding judgment on the verdict for defendants found, under sec. 2858m, Stats. (Laws of 1907, ch. 346), that plaintiff was not the owner of the note. If the court did so find, the finding was practically against the undisputed evidence and cannot be sustained. This is not a contest between a creditor and an assignee of property alleged to have been fraudulently transferred. The simple question is whether, on the evidence, the title to the note passed from Agnew, the payee, to the plaintiff, and it seems clear that it did. If the court found as claimed by defendants the finding is subject to review here without exception.

*Farrell v. Phillips,* 140 Wis. 611, 123 N. W. 117. Under the foregoing late decision of this court, if such finding is against the clear preponderance of the evidence it may be set aside. We are therefore of the opinion that upon the findings of the jury and the evidence the plaintiff was entitled to judgment and that his motion should have been granted, and that the court erred in granting the defendants' motion and awarding judgment dismissing the plaintiff's complaint.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to enter judgment for the plaintiff.