MARIE A. HESSE, Admx., Appellant, vs. JOHN A. COLBY
& SONS, Appellee.

*Opinion filed June 22, 1916.*

CONTRACTS—*when contract is not one for personal services.* A
contract between a corporation and an employee who had been
permanently crippled 'by an explosion in the employer's building,
by which the corporation agrees, in consideration of a general re-
lease, to pay the employee $3000 in equal monthly installments of
$50 each, will not be held to be a contract for personal services,
even though the employee agrees to perform such clerical duties as
she judges herself physically able to perform without injury to her
health or strength; and in case of her death before the full $3000
is paid, her administratrix may recover on the contract.

APPEAL from the Branch "B" Appellate Court for the
First District;—heard in that court on writ of error to the
Municipal Court of Chicago; the Hon. JOHN J. ROONEY,
Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, (JULIUS MOSES, and
SIGMUND W. DAVID, of counsel,) for appellant.

ADAMS, FOLLANSBEE, HAWLEY & SHOREY, (MELVIN
M. HAWLEY, and CLYDE E. SHOREY, of counsel,) for ap-
pellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant, as administratrix of the estate of Frances
Branitzky, recovered a judgment for $376.22 in the munici-
pal court of Chicago against appellee on a certain contract
entered into between appellee and appellant's intestate, bear-
ing date of February 9, 1910. The Appellate Court for
the First District reversed the judgment without remanding
the case. The case is brought to this court by appeal upon
a certificate of importance granted by the Appellate Court.

Frances Branitzky was employed by the appellee many
years as a saleswoman in the drapery department of its

store. On May 20, 1908, she was injured by an explosion which occurred in the appellee's building. The physician who treated her testified she sustained "a multitude of fractures," including fractures of the skull and leg, "and intervening between the fractured skull and fractured leg were some two dozen other fractures." She recovered sufficiently to walk with a cane, but one leg was crooked and shortened, and she remained in a weakened physical condition until her death, February 28, 1913. On February 11, 1910, appellant's intestate executed a general release to appellee in consideration of the payment to her of $6068.22 (which was paid) "and other good and valuable considerations," and cotemporaneously, and as a part of the general settlement, Frances Branitzky and appellee entered into a written contract by which appellee agreed to pay her a further sum of $3000, in installments of $50 per month during a period of five years. Frances Branitzky died in February, 1913. Up to that time appellee had made the monthly payments, amounting in all to $1800. No payments were made under the contract after her death, and this suit was brought by the administratrix of Frances Branitzky's estate to recover the installments alleged to have become due from the time of the death of Frances Branitzky up to the time suit was brought, covering a period of seven months.

The written contract sued on is as follows:

"This agreement, made and entered into this ninth day of February, A. D. 1910, by and between John A. Colby & Sons, an Illinois corporation with its principal place of business at Chicago, in said State of Illinois, party of the first part, and Frances Branitzky, of the city of Chicago, county and State aforesaid, party of the second part:

"Witnesseth: That in consideration of a general release herewith executed by the party of the second part to the party of the first part and others, and as a part of the consideration for said general release, the party of the first part promises and agrees to pay to the party of the second part the sum of three thousand dollars, ($3000,) payable monthly, commencing February 1, 1910, said

sum to be payable in equal installments of fifty dollars ($50) per month.

"The party of the second part, as a part of the consideration for this payment, agrees that during the five years from February 1, 1910, she will perform such clerical services for the party of the first part as she may be called upon to do and as she may be physically able to perform without injury to her health or strength.

"It is understood and agreed by the parties hereto that the hours of the party of the second part for such services shall be easy and that she shall be the judge as to whether or not she is able to work during said period of time, the meaning and intention being that the party of the second part shall perform such clerical work for the party of the first part as she is able to perform without injury to her health or strength during such period.

"In witness whereof the party of the first part has caused these presents to be signed by its president and secretary and its corporate seal annexed, and the party of the second part has signed and sealed these presents the day and year first above written.

JOHN A. COLBY & SONS,

By Henry C. Colby, *President.*

FRANCES BRANITZKY. (Seal.)

Attest: Harry J. Ilett, *Secretary."*

The construction and effect to be given to this contract contended for by appellee to sustain the judgment of the Appellate Court is, (1) that it is a contract for the personal services of Frances Branitzky which was terminated by her death; (2) that if the contract is to be construed as one wherein a part of the consideration for entering into it was the execution of the general release and a part of the $3000 was paid in consideration of Frances Branitzky's promise to render services, it is an entire and indivisible contract and no recovery was warranted. As shown by the opinion of the Appellate Court, that court construed the contract as one for the personal services of Frances Branitzky which was terminated by her death, and the judgment was based upon that construction.

Appellant contends (1) that the contract sued on is not a contract for personal services but a promise by appellee to pay a certain sum in consideration of the execution of the release; (2) that the promise of Frances Branitzky to

render services depended upon her own will, and, as a matter of law, was inoperative and unenforceable; (3) that if, however, the consideration for the contract is personal services in part and the release in part, a recovery can be had, and the failure to perform the services could be set up by the defendant, by way of recoupment, in mitigation of damages.

We have been referred to no adjudicated case which is of any special assistance in construing this contract. Its construction must be determined from the language used, considered in connection with the circumstances giving rise to its being entered into and the object and purpose of its execution. In our opinion the contract cannot be construed as a contract for the personal services of Frances Branitzky which was terminated by her death. The first paragraph recites that "in consideration of a general release" executed by Frances Branitzky, "and as a part of the consideration for said general release," appellee agreed to pay her $3000 in monthly installments of $50 each, commencing February 1, 1910. The next paragraph recites that "as a part of the consideration for this payment" Frances Branitzky will perform such clerical services for appellee "as she may be called upon to do and as she may be physically able to perform without injury to her health or strength." It was agreed that her hours for such service should be easy and that she should be the judge whether she was able to work during the period of time covered by the contract, "the meaning and intention being that the party of the second part [Frances Branitzky] shall perform such clerical work for the party of the first part [appellee] as she is able to perform without injury to her health or strength during said period." We are unable to construe the contract as one for the personal services of Frances Branitzky. It seems clear that the primary consideration for its execution was the release of her cause of action against appellee. There was no unconditional promise by Frances Branitzky

to render services, and the agreement to pay her the $3000
was not based on any agreement that bound her, uncondi-
tionally, to render services. In no event was she to ren-
der any service except of a clerical nature, which was the
same kind of service she performed before her injury, and
any obligation to render such services depended upon her
condition of health and strength, and she was to be the
judge of that. She was under no duty to respond to a de-
mand from appellee to perform services unless in her judg-
ment her health and strength were sufficient to enable her
to do so. If her health and strength were not such as
in her judgment made her able and fit to perform clerical
duties appellee was not entitled to her services, but was,
however, bound to pay her and perform the terms of the
contract on its part. Appellee agreed, unconditionally, to
pay her $3000, and her agreement was, not that she would
render services but that she would perform such clerical
duties as she judged herself physically able to perform
without injury to her health. The contract clearly con-
templates and means that Frances Branitzky was to be paid
$3000 by appellee whether she was ever able to perform
any clerical services or not, and while it also contemplated
that if she thought herself able to do so she was to per-
form such services, the consideration for the agreement was
primarily and essentially the release of the cause of action.
The appellee knew of the nature and character of Frances
Branitzky's injuries and must have known it was not prob-
able she would ever be able to perform the duties of a sales-
woman in its store. At least it knew this was a possibility
when it obligated itself to pay her $3000 whether she would
ever be able to render any services to appellee or not.

Nothing in the record justifies the claim that Frances
Branitzky violated the agreement. This claim is based on
proof that she worked four months in the drapery depart-
ment of another store before her death. The testimony
shows that during that employment she did fine needlework

and that she sat in a chair while doing her work. There is no proof that would justify an inference that she was at any time able to perform clerical services of the character she had performed for appellee before her injury, or that she was guilty of fraud or bad faith in not offering to return to the service of appellee. No demand or request was ever made that she should do so. The woman who had charge of the department where Frances Branitzky worked at needlework testified she was lame, walked with a cane and looked ill all the time.

On the record before us, if Frances Branitzky were living she would be entitled to recover, and, as we construe the agreement, no reason appears why her administratrix may not.

The judgment of the Appellate Court is reversed and the judgment of the municipal court affirmed.

*Judgment reversed.*