(No. 21168.—

The Foreman State Trust and Savings Bank, Admr., Defendant in Error, *vs.* Joseph Tauber, Exr., Plaintiff in Error.

*Opinion filed April 23, 1932.*

SAMUEL J. SHAEFFER, and GEORGE H. FOSTER, for plaintiff in error.

LEDERER, LIVINGSTON, KAHN & ADLER, (SIGMUND LIVINGSTON, HARRY H. KAHN, and ARCHIE H. SIEGEL, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendant in error, the Foreman State Trust and Savings Bank, as administrator of the estate of Frances Tauber, deceased, filed in the probate court of Cook county a claim against the estate of Max Tauber, deceased, for $20,000 under the provisions of an ante-nuptial contract entered into between Tauber and Frances Tauber. The claim was allowed as of the sixth class in the probate court. Plaintiff in error, Joseph Tauber, executor of the last will of Max Tauber, prosecuted an appeal to the circuit court

of Cook county, where, after trial, judgment was rendered for defendant in error against plaintiff in error for $20,000, to be paid in due course of administration. The Appellate Court for the First District affirmed the judgment of the circuit court. This court allowed a petition for a writ of *certiorari* for a review of the record.

On February 7, 1924, Max Tauber and Frances Bleier (later Frances Tauber) entered into an ante-nuptial contract, in which it was recited that Tauber was a widower with four living children by a former wife and was the owner of real and personal property of the value of several hundred thousand dollars, which was described in the contract; that Miss Bleier was a spinster of the age of about forty-two years, without any substantial amount of property, and that Tauber desired to pay to Miss Bleier, his intended wife, the sum of $20,000 to assure her of a reasonable income in the event of his death before her death and to give her during their coverture and their respective lives a good and comfortable home, proper support, care and maintenance. The contract then stated that in consideration of the marriage about to be entered into between the parties and the mutual covenants and agreements therein contained the parties made the agreement. The contract provided that neither of the parties thereto should have or claim, by reason of their marriage, any right, title or interest, as husband or wife, widow or widower or heir, in the property of the other which he or she owned or possessed or should own or possess during his or her lifetime or at his or her death. Miss Bleier covenanted and agreed, for herself, her heirs, administrators and assigns, that she would not claim any interest in the property of Tauber during his lifetime or after his death as dower, homestead, widow's award or otherwise; that after the proposed marriage Tauber might convey, lease, transfer and encumber any property owned by him free and clear of any interest of Miss Bleier as dower, homestead or otherwise, and that it

should be unnecessary for her to join with him in the execution of any deed, trust deed, mortgage, lease, assignment or other document conveying, leasing or encumbering his property. The contract further provided that it was understood "that notwithstanding agreements obviating the necessity of a wife or a widow joining in instruments of conveyance, trust deeds and mortgages, purchasers or third parties generally desire, and often require, the signature of wife or widow, as the case may be," and that therefore Miss Bleier covenanted that after the marriage she would "willingly, upon the request of Max Tauber, or his heirs, executors, administrators, assigns, trustees, legatees or devisees, or either of them, join with him in the execution and properly acknowledge, or so singly execute and properly acknowledge as may be desired or required, any quit-claim deed, deed, mortgage, lease or other indenture, instrument or document concerning the property, real, personal or mixed, of Max Tauber during his lifetime or after his death, to release her dower, homestead or any other right or for any other purpose." By a further provision of the contract Miss Bleier appointed as her attorney Max Tauber or Samuel J. Shaeffer, or either of them, to sign and acknowledge on her behalf any deed, trust deed, mortgage or other document releasing and waiving all right of homestead and dower and all other right, title and interest in any of the property of Tauber, his heirs, executors, administrators, assigns, trustees, legatees or devisees, or either of them. The contract further contained a covenant as follows: "And the said Max Tauber, for himself, his heirs, executors, administrators, assigns, trustees, devisees and legatees, covenants and agrees with the said Frances Bleier, his intended wife, in case the said intended marriage shall be solemnized and consummated, to settle and assure the said Frances Bleier the sum of $20,000 in cash, to be paid to her, the said Frances Bleier, by his executors or administrators, heirs, legatees or devisees, or any or either

of them, within sixty days, or as soon as possible after the date of his death, provided, however, that the said Frances Bleier shall survive the said Max Tauber."

On February 7, 1924, after the above described contract had been executed, Max Tauber and Frances Bleier were married and thereafter lived together as husband and wife until December 29, 1928, on which date Tauber shot and killed his wife and also shot and inflicted upon himself a wound of which he died the following day, December 30, 1928. No children were born of this marriage, and Mrs. Tauber left as her heirs two brothers, four sisters and her husband, Max Tauber. Tauber left surviving him as his heirs, three sons by a former marriage. He also left a will, which was admitted to probate and of which plaintiff in error is the executor. Defendant in error is the administrator of the estate of Mrs. Tauber, and as such administrator filed the claim against the estate of Tauber and alleged the facts above stated, and also that Tauber did not pay $20,000 to Mrs. Tauber in her lifetime and that plaintiff in error had not paid said sum to defendant in error since the death of the parties to the ante-nuptial contract.

It is first contended by plaintiff in error that the probate court had no jurisdiction to allow the claim of defendant in error because (1) said claim was for damages for a tort; (2) the action, if any, was one that should have been brought in a court of equity; and (3) the claim was contingent.

It is clear that the claim is not founded on tort but upon the ante-nuptial contract. It is for the specific amount which by that contract Max Tauber agreed should be paid from his estate to his wife provided she should survive him, and the position of defendant in error as disclosed by the claim filed and by its brief in this court, is, that since by his wrongful act Tauber prevented his wife from surviving him, his executor cannot assert the failure of the happening of that event to defeat the claim on the contract.

If it were true that the claim is one which is enforceable on equitable principles, only, and not by an action at law, it does not follow that the probate court was without jurisdiction to pass upon the claim and either allow or deny it, because the probate courts of this State, in the adjustment and allowance of claims against the estates of deceased persons, are invested with equitable jurisdiction. (*Henry* v. *Caruthers,* 196 Ill. 136; *Estate of Ramsay* v. *Whitbeck,* 183 id. 550.) It is true that where a claim is such that it remains contingent during the whole of the period fixed by statute for presenting claims against the estate of a deceased person it cannot be allowed against the estate. (*Beebe* v. *Kirkpatrick,* 321 Ill. 612; *Chicago Title and Trust Co.* v. *Fine Arts Building,* 288 id. 142; *Union Trust Co.* v. *Shoemaker,* 258 id. 564.) The claim presented by defendant in error against the estate of Max Tauber was not, however, a contingent claim. It is true that the covenant of Tauber in the ante-nuptial contract was that his estate should be liable to pay to his wife the sum of $20,000 provided she survived him, and that the liability on that covenant during the lives of Max and Frances Tauber was a contingent liability. But when the claim of defendant in error was presented in the probate court both Tauber and Mrs. Tauber were dead, and the liability, if any, of the estate of Tauber to the administrator of the estate of Mrs. Tauber was absolute and did not depend for its existence or its enforceability upon the happening of any future event or condition.

The main question in the case is whether, under the terms of the ante-nuptial contract and the facts as shown by the evidence, there is any liability of the estate of Max Tauber to the administrator of Mrs. Tauber. The contention of plaintiff in error is that the liability of the estate of Tauber, under the terms of the contract, was conditional upon Mrs. Tauber surviving Tauber, and that since she died before he did the condition was not fulfilled and there is

no liability. On the other hand, defendant in error contends that, since the fulfillment of the condition that Mrs. Tauber survive Tauber was prevented by the willful and wrongful act of Tauber, the liability on the covenant to pay the $20,000 became absolute without the fulfillment of the condition. By the evidence and the admission of the attorney for plaintiff in error on the trial it is established that the killing of Mrs. Tauber by Tauber was deliberate and intentional. It is well established by the authorities that a party to a contract who by his deliberate act prevents the fulfillment of a condition on which his liability under the contract depends cannot take advantage of his own wrongful conduct and assert the failure of the fulfillment of the condition to defeat his liability under the contract. (*Jones* v. *Walker*, 3 B. Mon. (Ky.) 163, 56 Am. Dec. 557; *Cape Fear Navigation Co.* v. *Wilcox*, 52 N. C. 481, 78 Am. Dec. 260; *Williams* v. *Bank of United States*, 2 Pet. 96; *Patterson* v. *Meyerhofer*, 204 N. Y. 96, 97 N. E. 472; *Case* v. *Beyer*, 142 Wis. 496, 125 N. W. 947; *Lehmann* v. *Webster & Co.* 209 Ill. 264; *St. Louis and Peoria Railroad Co.* v. *Kerr*, 153 id. 182; *Town of Mt. Vernon* v. *Patton*, 94 id. 65; 6 R. C. L. 945-946.) In *Becker* v. *Becker*, 250 Ill. 117, where one party to an ante-nuptial contract had failed to perform a covenant of the contract and the non-performance of the covenant had been assented to and insisted upon by the other party, it was held that it would be inequitable to allow the heirs of such other party to insist upon a forfeiture of the contract because the particular covenant was not performed. In *Logan* v. *Whitney*, 129 App. Div. (N. Y.) 666, 114 N. Y. Sup. 255, the precise question here under consideration was presented. In that case, by the terms of an ante-nuptial contract the wife, if she survived the husband, was to receive $10,000 from the estate of her husband in lieu of dower and any interest that she might otherwise have in his property. The wife was killed by the husband, who then committed suicide. It was held

that the administratrix of the estate of the wife had a cause of action for the $10,000 against the estate of the husband. The court said: "In this case the happening of the contingency upon which the payment was to be made was prevented by the wrongful act of the promisor, and hence neither he nor those claiming under him can defeat an action on the promise by showing that the contingency did not happen."

Plaintiff in error says that had Max Tauber not killed his wife it is possible that she might not have survived him. Whatever uncertainty there was in that respect was removed by the deliberate and wrongful act of Tauber. Since he by his deliberate act prevented all possibility of his wife surviving him, it must be accepted as a fact that she would have done so had he not prevented it.

It is also contended that since Mrs. Tauber had no cause of action under the contract in her lifetime there is no cause of action in her administrator. It is true that in her lifetime Mrs. Tauber had no right of action under the contract, but it is also true that during her lifetime she had a valuable property right under the contract—a right to receive $20,000 from the estate of Max Tauber should she survive him. This right of Mrs. Tauber under the contract at her death became a part of her estate, and the question is not one of survival of a cause of action but is purely a question of whether the estate of Tauber is liable to pay $20,000 under his covenant in the ante-nuptial contract notwithstanding the fact that his wife died before he did. If there is such a liability on the part of the estate of Tauber, defendant in error is the proper party to enforce the liability. (*Hesse* v. *Colby & Sons,* 273 Ill. 523.) As we have stated above, the fulfillment of the condition on which the $20,000 was to be paid by his estate—that is, that his wife should survive him—was prevented by the deliberate and wrongful act of Tauber, and under the authorities above cited it must be held that those claiming under Tauber cannot de-

feat the liability on the covenant to pay the $20,000 by asserting the non-fulfillment of the condition.

Plaintiff in error contends that the evidence establishes that Mrs. Tauber in her lifetime failed and refused to perform the covenant in the ante-nuptial contract that she would willingly join with her husband in the execution of "any quit-claim deed, deed, mortgage, lease or other indenture, instrument or document concerning the property, real, personal or mixed, of Max Tauber," and that, therefore, there can be no recovery by defendant in error on the contract. In the ante-nuptial contract there was set out the description of nine pieces of real estate owned by Tauber, including a farm at Crown Point, Indiana. Joseph Tauber, the executor and chief beneficiary under the will of his father, Max Tauber, testified that his father in his lifetime owned a piece of property at Crown Point, and that in 1928 there arose a question concerning the boundary lines of this property, "of ten feet on each side of the farm." The court sustained an objection to any further testimony by this witness because he was a beneficiary under the will of Tauber, and also sustained an objection to an offer to prove by him that in the summer of 1928 a survey of the property owned by his father at Crown Point disclosed the fact that the driveway into this property was owned by a doctor who owned property adjacent to that of Tauber; that an agreement was made that the doctor would convey the driveway to Tauber and he in consideration of such conveyance would convey to the doctor a strip of land ten feet wide on the opposite side of the farm; that a deed to this strip of land to the doctor to be signed by Tauber and his wife was drafted and that Mrs. Tauber failed and refused to execute the deed at Tauber's request; that the doctor, on the advice of his attorney, refused to accept the deed without the signature of Mrs. Tauber notwithstanding the ante-nuptial agreement, and the matter of the boundary of the Crown Point prop-

erty was not settled during the life of Tauber, but that "after the death of Max Tauber and the death of Frances Bleier the matter was adjusted by Joseph Tauber with the doctor at Crown Point, Indiana."

Ben Newmark, a witness for plaintiff in error, testified that he is a brother-in-law of Joseph Tauber; that he was in the home of Max Tauber in July, 1928, and at that time Tauber had a contract or a deed which he presented to Mrs. Tauber, saying that it related to the Crown Point property, "whereby the party next door wants to exchange ten feet of land on either side of the farm with me and demands your signature as well as mine," and that Mrs. Tauber refused to sign the paper and said, "I won't sign anything."

Matt Kretzman, a witness for plaintiff in error, testified that he was a notary public; that in December, 1928, Max Tauber handed him a paper to take to Mrs. Tauber for her signature; that he presented the paper to Mrs. Tauber, told her it was a mortgage on a piece of property on the avenue and requested her to sign it for Tauber; that she said, "No, Kretzman; I won't sign anything for him or you;" that about three days later the witness, at the request of Tauber, again presented the paper to Mrs. Tauber for her signature, and she said she would not sign the "darned paper" and that she was not signing anything.

A witness who was an attorney for Max Tauber in his lifetime, testified that in 1928 he had a talk with Tauber about the ante-nuptial agreement and "taking up with the Chicago Title and Trust Company the question of issuing a guaranty policy on a mortgage or trust deed without the signature of his wife, Frances Bleier Tauber;" that thereafter witness had a conversation with Spitzer, the head of, and Scranton, the first assistant in the law department of, the Chicago Title and Trust Company and left with them a copy of the ante-nuptial agreement in question, and that after a few days he had another conversation with the

same men. He was then asked, "Did Mr. Spitzer and Mr. Scranton inform you whether or not the Chicago Title and Trust Company would issue a guaranty policy on a mortgage encumbrance without the signature of Frances Bleier Tauber?" and an objection to the question was sustained. An objection was also sustained by the court to an offer of proof that the Chicago Title and Trust Company has a policy of refusing to issue a title guaranty policy to either an owner or mortgagee of property where the title to such land is acquired from a married man by a conveyance not signed by his wife, even though there be an ante-nuptial agreement between the man and wife by which the wife waives dower, other statutory rights and every conceivable right in the husband's real estate.

We take it as established by the foregoing evidence that Mrs. Tauber in her lifetime did, as contended by plaintiff in error, refuse to execute documents relating to the property of Max Tauber which by the ante-nuptial agreement she had covenanted to execute willingly at his request. We also take it as true, although not clearly established because of the action of the trial judge in sustaining objections to proof offered, that the parties to whom these documents were to be delivered refused to accept them because they were not executed by Mrs. Tauber. The question is therefore presented whether the failure and refusal by Mrs. Tauber to sign such documents prevents a recovery on the contract by defendant in error, and the answer to that question depends on whether the performance of the covenant of Mrs. Tauber to sign such documents is a condition precedent to the right of her or her administrator to have $20,000 from the estate of Tauber or is an independent covenant, the breach of which does not bar such claim against his estate.

It appears from the contract that at the time it was executed Max Tauber was the owner of real estate valued at $322,000 and that Frances Bleier had no substantial amount

of property of any kind, and that in consideration of the contemplated marriage she released all interest that she might otherwise, by virtue of the marriage, have had in the property of Tauber for his promise that she should have $20,000 from his estate should she survive him. She also covenanted to execute any deeds, mortgages or other documents relating to the property of Tauber willingly at his request. Covenants in an agreement will be construed as conditions precedent or as independent covenants, according to the intention of the parties and the good sense of the case. (*Palmer* v. *Meriden Britannia Co.* 188 Ill. 508; *Lunn* v. *Gage,* 37 id. 19.) Where a covenant goes only to a part of the consideration on both sides and a breach of such covenant may be paid for in damages it is generally considered as an independent covenant, the breach of which may not be relied upon by the defendant to defeat liability on his part and for the breach of the covenant he must rely upon his claim for damages, either by way of recoupment or a separate action. (*Rubens* v. *Hill,* 213 Ill. 523; *Prairie Farmer Co.* v. *Taylor,* 69 id. 440; *Nelson* v. *Oren,* 41 id. 18.) In this case it appears quite clear that the covenant of Frances Bleier (afterward Frances Tauber) that she would willingly sign and acknowledge deeds, mortgages and other documents relating to the property of Max Tauber was but a small part of the consideration for his covenant that she should receive $20,000 from his estate and that the marriage and the release by Miss Bleier of all interest that she might otherwise have in his property was the principal consideration for his covenant. By the words of the contract itself it appears that the covenant of Miss Bleier was in the nature of a supplemental covenant to make effective for the satisfaction of third parties her release of all interest in the property of Tauber. This is shown by the words in the contract, as follows: "It is understood between the parties hereto that notwithstanding agreements obviating the necessity of a wife or a widow

joining in instruments of conveyance, trust deeds and mortgages, purchasers or third parties generally desire, and often require, the signature of wife or widow, as the case may be."

Plaintiff in error relies upon the case of *Becker* v. *Becker,* 241 Ill. 423. In that case it appears that a man and a woman in contemplation of marriage entered into an antenuptial agreement by which each released all right or claim in and to the property of the other. Both the man and the woman owned a considerable amount of property at the time the contract was made, and the woman released all right and claim to take any interest in the property of the man after his death ·if she survived him. The man covenanted to keep in force for the woman's benefit a policy of insurance on his life for $2000, and was at her death, by the terms of the contract, to take all of her property if he survived her. It was held that the covenant to keep in force and effect the insurance policy on his life for his wife's benefit was a condition precedent to the husband's right to take his wife's property at her death. The court said: "The covenants that the wife, in case she survived her husband, was to have as her portion the proceeds of said insurance policy and in case the husband survived the wife he was to have her entire estate, were mutual covenants and were dependent upon each other, and the husband having violated his covenant to keep in force the life insurance, it would be, we think, clearly inequitable to enforce the covenant of the wife in his favor, to the exclusion of the right of her heirs to participate in the division of her estate." The contract and the situation and position of the parties at the time the contract was executed in this case are manifestly entirely different from the contract and the situation of the parties in the *Becker case.* When the contract in this case was made, Miss Bleier was, according to the contract, the owner of no considerable amount of prop-

erty of any kind but Tauber owned, besides personal property, real estate valued at over $300,000. As we have stated, the good sense of the case indicates that the principal consideration for the covenant of Tauber that his wife should have $20,000 from his estate in case she survived him was the marriage and her release of all other interest in his property and his estate, whereas in the *Becker case* the principal consideration for the agreement that the husband should take all of his wife's property should he survive her was his covenant to keep in force for the benefit of his wife the policy of insurance on his life. It is our conclusion that the covenant of Miss Bleier to sign documents relating to the property of Tauber and his covenant that she should have $20,000 from his estate were not intended to be, and should not be construed as, mutual and dependent covenants, but were intended to be, and should be construed as, independent covenants. It follows that the fact that Mrs. Tauber refused to sign documents relating to the property of Tauber is not a defense to the claim of defendant in error on the covenant of Tauber that his estate should be liable for $20,000 to his wife. For the breach of the covenant to sign the documents any damages suffered by Tauber could be recovered by way of recoupment. Plaintiff in error neither introduced nor offered to introduce any evidence to show what damages, if any, were suffered by Tauber by reason of Mrs. Tauber's failure and refusal to perform her covenant. There being no such evidence, the trial court could make no allowance for such damages and did not err in not making such allowance. *Palmer* v. *Meriden Britannia Co. supra.*

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*