BENJAMIN PATTERSON, Appellant, *v.* ANNA MEYERHOFER, Respondent.

*Vendor and purchaser — breach of contract of sale — agreement to take property to be procured by vendor frustrated by purchaser bidding in such property at foreclosure sale — purchaser liable for difference between price for which property was bid in and contract price.*

1. In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part, and a party who causes or sanctions the breach of an agreement is thereby precluded from recovering damages for its non-performance or from interposing it as a defense to an action upon the contract.

2. Where defendant entered into an agreement with plaintiff to purchase from him, at a certain price, property which she knew must be bought by him at a foreclosure sale, she impliedly agreed that she would do nothing to prevent plaintiff from acquiring the property at such sale, and by bidding against him and buying the premises herself for less than the contract price, she violated this implied agreement, and, although no trust relation is established, she is liable for the difference between the sum she paid for the property and the sum she agreed to pay plaintiff therefor.

*Patterson* v. *Meyerhofer*, 138 App. Div. 891, reversed.

(Argued October 12, 1911; decided January 9, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 5, 1910, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D-Cady Herrick* and *George Bell* for appellant. The contract for the conveyance of four of the houses to the defendant was but a part of the agreement between the parties, and the whole agreement was not merged in this contract. (*Taintor* v. *Hemmingway,* 18 Hun, 458; 83 N. Y. 610; *Remington* v. *Palmer,* 62 N. Y. 31; *Morris* v. *Whitcher,* 20 N. Y. 47; *Sage* v. *Truslow,* 88 N. Y. 240; *Chapin* v. *Dobson,* 78 N. Y. 74; *Eighmie* v. *Taylor,* 98 N. Y. 288; *Studwell* v. *Bush Co.,* 126 App. Div. 818; *M. G. Co.* v. *Gluck,* 52 Misc. Rep. 652; *Thomas* v. *Scutt,* 127 N. Y. 133; *Juilliard* v. *Chaffee,* 92 N. Y. 529; *Taylor* v. *Elmira Storage Co.,* 54 Misc. Rep. 363.) When the defendant purchased the premises in question at the foreclosure sale she held said premises as trustee *ex maleficio* for the benefit of the plaintiff and his principal. (*Ryan* v. *Dox,* 34 N. Y. 307.) Upon the written contract alone a trust relation arose which binds the defendant to hold this property subject to the equitable rights of plaintiff. (*Williams* v. *Haddock,* 145 N. Y. 144; *McCarthy* v. *Myers,* 5 Hun, 83; *Clark* v. *L. I. R. Co.,* 126 App. Div. 282; *Bostwick* v. *Beach,* 105 N. Y. 661; *McKechnie* v. *Sterling,* 48 Barb. 330; *Fuson* v. *Lambden,* 66 S. W. Rep. 1004; *Bush* v. *Marshall,* 47 U. S. 284; *Stephens* v. *Black,* 77 Penn. St. 138.)

*H. E. J. MacDermott* for respondent. The evidence fully sustained the finding that there was no parol agreement between plaintiff and defendant. (*Gerard* v. *Cowperthwaite,* 21 Misc. Rep. 371; 143 N. Y. 637; *Seitz* v.

*Machine Co.*, 141 U. S. 510; *Leese* v. *Lamprecht*, 196 N. Y. 32; *J. B. College* v. *Allen*, 172 N. Y. 291; *Sturmdorf* v. *Saunders*, 117 App. Div. 762; 190 N. Y. 555; *Smith* v. *Dotterweich*, 200 N. Y. 299, 305.) There existed no relations of confidence or trust between the parties. (*Wood* v. *Rabe*, 96 N. Y. 414; *Mackall* v. *Olcott*, 93 App. Div. 282; *Wheeler* v. *Reynolds*, 66 N. Y. 227; *Levy* v. *Brush*, 45 N. Y. 589; *Jenkins* v. *Bishop*, 136 App. Div. 104; *Fagin* v. *MacDonald*, 115 App. Div. 89; *Cooley* v. *Lobdell*, 153 N. Y. 596; *Ponds* v. *Egbert*, 117 App. Div. 756; *Blanchard* v. *Archer*, 93 App. Div. 459.) The respondent had a right to rescind the contract and purchase the property at the foreclosure sale, since, when a party to a contract is unable to perform, the other contracting party, when this fact is known, may rescind the contract. (*Callahan* v. *K., A. C. & L. C. R. R. Co.*, 199 N. Y. 268; *Schaffer* v. *Hillaker*, 140 App. Div. 173.)

WILLARD BARTLETT, J. The parties to this action entered into a written contract whereby the plaintiff agreed to sell and the defendant agreed to buy four several parcels of land with the houses thereon for the sum of $23,000, to be paid partly in cash and partly by taking title subject to certain mortgages upon the property. When she executed this contract, the defendant knew that the plaintiff was not then the owner of the premises which he agreed to sell to her but that he expected and intended to acquire title thereto by purchasing the same at a foreclosure sale. Before this foreclosure sale took place the defendant stated to the plaintiff that she would not perform the contract on her part but intended to buy the premises for her own account without in any way recognizing the said contract as binding upon her, and this she did, buying the four parcels for $5,595 each. The plaintiff attended the foreclosure sale, able, ready and willing to purchase the premises, and he bid for the same, but in every instance of a bid

made by him the defendant bid a higher sum. The result was that she acquired each lot for $155 less than she had obligated herself to pay the plaintiff therefor under the contract or $620 less in all.

In the foreclosure sale was included a fifth house, which the defendant also purchased. This was not mentioned in the written contract between the parties, but according to the complaint there was a prior parol agreement which provided that the plaintiff should buy all five houses at the foreclosure sale and should convey only four of them to the defendant, retaining the fifth house for himself.

Upon these facts the plaintiff brought the present action demanding judgment that the defendant convey to him the fifth house and declaring that he has a lien upon the premises purchased by her at the foreclosure sale and that she holds the same in trust for the plaintiff subject to the contract. The complaint also prays that the plaintiff be awarded the sum of $620 damages, being the difference between the price which the defendant paid at the foreclosure sale for the four houses mentioned in the contract and the price which she would have had to pay the plaintiff thereunder.

The learned judge who tried the case at Special Term rendered judgment in favor of the defendant, holding that under the contract of sale there was no relation of confidence between the vendor and vendee. "In the present case," he said, "each party was free to act for his own interest, restricted only by the stipulations of the contract." He was, therefore, of the opinion that "the defendant had a right to buy in at the auction and that she is entitled to hold exactly as though she had been a stranger and that the plaintiff is not entitled to recover the difference between the price paid at the auction and the contract price."

I am inclined to agree with the trial court that no relation of trust can be spelled out of the transactions between the parties. There is no finding of any parol agreement

in respect to the fifth house which has been mentioned, and even if there had been such an agreement resting merely in parol, I do not see that it would have been enforceable. As to the four parcels which constituted the subject-matter of the written contract, the defendant avowed her intention to ignore that contract before bidding for them, and cannot be regarded as having gone into possession *under* the plaintiff as vendor, but did so rather in defiance of any right of his; hence, there is no likeness to the cases of *Galloway* v. *Finley* (12 Peters, [U. S.] 264) and *Bush* v. *Marshall* (6 How. [U. S.], 284) relied upon by the appellant. In those cases, it is true, vendees who had bought up better titles than those of their vendors were treated as trustees for the latter; but the contracts of sale had been carried out and the vendees were in full possession of the lands before they acquired the superior outstanding title; and both decisions were expressly placed on the ground that under such circumstances the vendor and vendee stand in the relation of landlord and tenant and the vendee cannot disavow the vendor's title.

There is no need of judicially declaring any trust in the defendant, however, to secure to the plaintiff the profit which he would have made if the defendant had not intervened as purchaser at the foreclosure sale and had fulfilled the written contract on her part. This is represented by his claim for $620 damages. That amount, under the facts as found, I think the plaintiff was entitled to recover. He has demanded it in his complaint and he should not be thrown out of court because he has also prayed for too much equitable relief.

In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.

This proposition necessarily follows from the general rule that a party who causes or sanctions the breach of

an agreement is thereby precluded from recovering damages for its non-performance or from interposing it as a defense to an action upon the contract. (*Young* v. *Hunter*, 6 N. Y. 203; *Barton* v. *Gray*, 57 Mich. 622, and cases there cited.)

"Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which may hinder or obstruct that other in doing that thing." (*Gay* v. *Blanchard*, 32 La. Ann. 497.)

By entering into the contract to purchase from the plaintiff property which she knew he would have to buy at the foreclosure sale in order to convey it to her, the defendant impliedly agreed that she would do nothing to prevent him from acquiring the property at such sale. The defendant violated the agreement thus implied on her part by bidding for and buying the premises herself. Although the plaintiff bid therefor she uniformly outbid him. Presumably if she had not interfered he could have bought the property for the same price which she paid for it. He would then have been able to sell it to her for the price specified in the contract (assuming that she fufilled the contract), which was $620 more. This sum, therefore, represents the loss which he has suffered. It is the measure of the plaintiff's damages for the defendant's breach of contract.

I see no escape from this conclusion. It is true that the contract contemplated that the four houses should go to the defendant and they have gone to her; but that is not all. The contract contemplated that they should go to the plaintiff first. In that event the plaintiff would have received $620 which he has not got. This would have had to be paid by the defendant if she had fulfilled her contract; and she should be required to pay it now unless she can present some better defense than is presented in this record. This will place both parties in the position contemplated by the contract. The defendant

will have paid no more than the contract obligated her to pay; the plaintiff will have received all to which the contract entitled him. I leave the fifth house out of consideration because as to that it seems to me there was no enforceable agreement.

For these reasons the judgments of the Appellate Division and the Special Term should be reversed and a new trial granted, with costs to abide the event.

CHASE, J. (dissenting): On January 5, 1909, John W. Shorrock was the owner of five houses and lots that adjoined each other in the borough of Brooklyn, New York city. It is admitted that they were. of equal value. They were covered by three mortgages aggregating $23,000 and the five lots were described therein as one parcel of land. An action was then pending for the foreclosure of the second of said three mortgages and the sale of the property described therein. Defendant and her husband, had talked with Shorrock about purchasing such houses and lots prior to that time. On or about January 5, 1909, Shorrock called at the house of the defendant, and she and her husband went with him to the office of the plaintiff and negotiations were had in regard to the purchase of some or all of said houses and lots. On that day the plaintiff prepared a written agreement to be executed by and between him and the defendant and her husband, in regard to the purchase of four of said five houses and lots for the sum of $23,000, and such proposed agreement stated in some detail the facts relating to the property and that one of the mortgages thereon was then being foreclosed and that the property would be offered for sale thereunder. Such proposed agreement was referred to the counsel of a trust company acting for the defendant and her husband, and he advised the defendant not to sign it because of its complexity and it was not executed.

An ordinary contract for the purchase and sale of real

property was entered into by and between the plaintiff and the defendant without including therein the defendant's husband, which agreement is dated January 13, 1909, and in and by such agreement the plaintiff agreed to sell and the defendant to purchase four of said houses and lots specified for the sum of $23,000, to be paid as therein specified, and it was therein provided that the deed should be delivered March 16, 1909. The contract did not refer to nor did it include special agreements relating to the action to foreclose the mortgage then pending, nor as to the fact that the defendant was not at the time of making the contract the owner of the property. On February 19, 1909, judgment of foreclosure and sale was entered in the action and the property was advertised for sale under such judgment to take place on March 29, 1909. On March 11 the attorney for the trust company wrote to the defendant suggesting a postponement of the time for closing the title under the contract to March 30, and on March 13 a further letter saying that he had been obliged to further postpone closing the title to April 5. On March 15 the defendant wrote to such attorney protesting against such adjournments unless she was given security that the agreement would be carried out, and on March 26 she further wrote such attorney saying, "You needn't trouble yourself about the property any longer, as I considered the agreement void in my letter from the 15th of March." On March 29 the plaintiff and the defendant were both present at the sale. The defendant notified the plaintiff that she intended to bid on the property (the five houses and lots) to the amount of $28,000. The defendant bid thereon, and one or two bids were made by the plaintiff when bids were continued by the defendant and others until the property was struck off to the defendant for substantially $27,975. Plaintiff was acting solely for Shorrock, and in this opinion I am treating the plaintiff and Shorrock as one person. After making the contract upon which this

action is brought, the plaintiff purchased the third outstanding mortgage upon said property. Shorrock, therefore, was entitled to the return to him through a surplus proceeding of every dollar that the plaintiff might bid on said property over and above the amount necessary to pay the mortgage then being foreclosed, and it was immaterial to him, therefore, how much over and above the amount of the mortgage being foreclosed the property was bid off for, providing it was bid off by or for Shorrock, except as it was necessary to pay the amount thereof upon the bid and to obtain a return thereof through a proceeding as provided by the Code of Civil Procedure. To make the defendant bid for the five houses and lots at at a price equal to $23,000 for the four houses and lots, it would have been necessary for the plaintiff to have required the defendant to bid thereon the sum of $28,750. A surplus proceeding was inevitable, because others than the defendant bid on said property more than $23,000, and it was quite foolish and without reason for the plaintiff to have failed to make the defendant bid thereon the amount of $28,000 or an amount in excess thereof, at least up to $28,750. He allowed the defendant to bid off the whole property, as I have stated, for substantially $27,975, when a further bid of $25 would have resulted in the purchase of the whole property and enabled him to fulfill his contract with the defendant, and the additional $25 would have been returned to Shorrock in the inevitable surplus proceeding. The plaintiff testified: " I could not say how much I would have to pay for the property, but I was prepared to bid it in up to any sum necessary." And he also testified: "I intended to bid when she got up to $28,000." He did not do so, however. Why he did not carry out his intention does not appear. He now brings this action, assuming and insisting that the defendant is bound by all of the special agreements included in the proposed contract prepared by the plaintiff to be executed by him and by the defendant and her hus-

band. That contract was not executed either by the defendant or her husband; it was merged in the agreement of January 13, and the court in this action found "That no agreement exists that refers to the transaction other than the contract aforementioned. (Contract of January 13.)" The facts stated in this opinion are found by the trial court or may be properly considered in the record in determining the appellant's contention as to whether proposed findings by him were properly ruled upon by the court. It is alleged in the complaint in substance that before the execution of the agreement of January 13 it was orally agreed between the parties hereto that the plaintiff should, on the sale under said foreclosure action, purchase said five lots with the houses thereon and have the same conveyed to the defendant, and that he would thereupon convey to the defendant the four lots with the houses thereon specifically described in the complaint, and retain the other of said five houses and lots for the benefit of Shorrock.

This action is brought to compel the defendant to "convey by deed to this plaintiff all of the premises purchased by her at said foreclosure sale, excepting the four parcels mentioned and described in the said contract, and that she also pay to the plaintiff the sum of $620.00 with interest from March 29th, 1909, damages sustained by plaintiff as aforesaid, and that plaintiff has a lien therefor upon the premises purchased by the defendant at foreclosure sale aforesaid and declaring that defendant holds the same and her bid and purchase thereof in trust for this plaintiff and for the purpose of and subject to the said contract."

The action is based upon the claim that the defendant in purchasing the property at the foreclosure sale was acting for the plaintiff and that she holds it as trustee for him. No privity of contract relating to the fifth house and lot is shown. I am of the opinion that no relation of trust of any kind was established. The defendant not

only bid upon the property in opposition to the plaintiff but openly declared her purpose to bid thereon for herself to a specified amount, while the plaintiff with full knowledge of her purpose stood in unnecessary acquiescence in the defendant's thus becoming a successful bidder for the property for an amount less than the maximum amount for which she would bid.

The contract of January 13 is the basis of the rights of the parties. Any action between the parties must be upon that contract. It may be assumed that the defendant is precluded by her acts from sustaining any action against the plaintiff for his non-performance of the contract. Whether the plaintiff can sustain an action at law upon the contract under the circumstances disclosed it is unnecessary to determine. The action brought is not one for damages under the contract nor for damages by reason of the defendant's fraud and wrongdoing.

The complaint is essentially one in equity. There is nothing in it relating to damages except as an incident to the equitable relief. The plaintiff is a member of the bar and he and his counsel have consistently treated the action as one in equity. It was placed upon the Special Term calendar and tried at the Special Term. If the plaintiff at the Special Term when he found that the complaint was to be dismissed because of his failure to establish a trust relation had asserted his claim to recover as in an action at law or asked that the case be sent to the Trial Term he would now stand in a very different position, but no such suggestion was made at Special Term, and there has been no suggestion either at the Appellate Division or in this court that the action is one other than an action in equity triable at Special Term. The appellant continues to insist in this court that he has proved a cause of action in equity and that he is entitled to a judgment following his pleading and demand at Special Term. It is not urged nor asserted in this court that the judgment should be reversed because the plaintiff is entitled to

relief as in an action at law. The necessity of requiring that a person shall be reasonably bound to the terms and demands of his pleading makes it necessary to recognize the distinction between an action at law and an action in equity although both forms of actions are within the jurisdiction of the same court. This court has recently held that if a party brings an equitable action even now when the same court administers both systems of law and equity the party must maintain his equitable action upon equitable grounds or fail, even though he may prove a good cause of action at law. (*Loeb* v. *Supreme Lodge, Royal Arcanum,* 198 N. Y. 180.) There was a dissent by three of the judges in that case, but the conclusion of the dissenting judges was expressed by Judge HAIGHT as follows: " When the trial court became satisfied that the plaintiffs had abandoned the equitable issue raised by the pleadings and rested upon the issue that the assessment had been duly tendered and that Loeb was not in default the trial should have been suspended and the issue sent to the trial term of the court to be disposed of by a jury and that the plaintiffs should not have been turned out of court by having their complaint dismissed." (p. 193.)

In this case the plaintiff has never urged nor even asserted by pleading or otherwise that he could recover as in an action at law, and no such demand or claim is made in this court.

I think that the complaint was properly dismissed and the judgment should be affirmed, with costs.

CULLEN, Ch. J., VANN and WERNER, JJ., concur with WILLARD BARTLETT, J.; HISCOCK and COLLIN, JJ., concur with CHASE, J.

Judgments reversed, etc.