LUCILLE S. FABRE and CLEMENT D. ALBRECHT, as Executors, etc., of CLARENCE L. FABRE, Deceased, Appellants, v. J. ELMER O'DONOHUE, Respondent.

Second Department, December 14, 1917.

**Contracts — assignment of life insurance policies as security for payment of salary — breach — waiver — recovery where contract against public policy.**

Where the president and treasurer of a corporation assigned policies of insurance upon his life to the secretary of said corporation to secure the payment of salary, and the secretary, upon discovering the insolvency of the corporation due to the misconduct of its president, resigned, and the president thereafter stated to him that he would pay, there was a waiver of the president's right to insist that the resignation of the secretary was a breach of the agreement, especially since the misconduct of the president had practically prevented further performance by the secretary.

If said agreement should be condemned as against public policy and as a breach of trust on the part of the president of the corporation, his executors cannot recover from the secretary.

APPEAL by the plaintiffs, Lucille S. Fabre and another, as executors, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 28th day of June, 1916, dismissing the complaint on the merits upon the decision of the court after a trial at the Kings County Special Term.

*George A. Clement* [*William S. Haskell* with him on the brief], for the appellants.

*John J. Kuhn,* for the respondent.

JENKS, P. J.:

A jury was waived, and the court's findings and conclusions dismissed the plaintiffs upon the merits. The plaintiffs, as executors of Fabre, sue to recover the proceeds of 3 life-insurance policies upon Fabre's life, payable to his estate or to his executors, which had been assigned by Fabre to the defendant as security. An agreement under seal, made by Fabre and the defendant, that bound their heirs, executors and adminis-

Second Department, December, 1917.　　　　　[Vol. 180.

trators, executed March 20, 1912, provided for the said assignments of the policies and the conditions thereof. The decision of the court involved broader construction of this agreement than that made by the plaintiffs, and a subsequent variance thereof by Fabre favorable to the defendant. It is not at all clear that the issues defined and limited by the pleadings justified in full the theory of the court's disposition. But I am of opinion that the decision was right save in a minor feature of the case, and I advise an affirmance with a slight modification.

We may admit the plaintiffs' construction of the agreement of March 20, 1912, in that the assignment of the policies was to secure the payment of the salary of the defendant for the term of five years. It is true that the defendant disabled himself, by his resignation of his office as secretary during that term, from performance of the contract, and that if the dealings between him and Fabre had thereupon ceased such act might be fatal to his present attitude. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96, 101, and cases cited; *People* v. *Globe Mut. Life Ins. Co.*, 91 id. 179.) The testator of the plaintiffs, Fabre, virtually owned and wholly dominated the corporation and was both its president and treasurer. There is proof that it was insolvent from its inception, and the court properly found that Fabre, in his management and control, committed dishonest and unlawful acts and conducted its affairs in an unbusiness-like manner so as to cause it to become financially insolvent, all without the knowledge and consent of the defendant, and that upon the discovery of such conduct and in consequence thereof the defendant resigned his office in December, 1914. The fact of such resignation was known to Fabre. It appears by the testimony of Charles O'Donohue that thereafter Fabre said to the defendant, in the presence of the witness, after the defendant had stated that he wanted his money, " I will pay him that on Monday morning, I will pay him the $15,000 on Monday morning." The witness said, " How do you expect to get it? " and Fabre replied, " That don't make any difference, * * * he will be paid on Monday morning." The words doubtless referred to the intended suicide of Fabre, that followed almost immediately and on February 16, 1915. Thereupon the policies for $15,000,

then in the hands of the defendant as security, matured. I think that we may find a waiver by Fabre of any right that he might have had to insist that the resignation of O'Donohue was a breach of the said agreement. (See *Clark* v. *West*, 193 N. Y. 349.) It might further be urged with plausibility that Fabre's flagrant misconduct of the corporation had brought it to such a crisis at the time of defendant's resignation that Fabre practically, if not technically, had prevented further performance by the defendant. All expedients had failed, and the taking over of the corporation by the creditors in order to wind it up, that followed within three months, was inevitable. (See *Fleming* v. *Gilbert*, 3 Johns. 528, 531.)

Contention is made that the agreement in itself was against public policy and, therefore, unenforcible. It is not essential that we should decide this question. For if the agreement were to be condemned in that it involves a breach of trust on the part of Fabre (*McClure* v. *Law*, 161 N. Y. 78), I think that the plaintiffs as executors of Fabre could not recover. (*Knowlton* v. *Congress & Empire Spring Co.*, 57 N. Y. 518, 531 *et seq.*) And this case presents no question as to any rights of the Clarence L. Fabre corporation, as declared in *McClure* v. *Law* (*supra*).

As this judgment is affirmed upon the theory that there was a sale of the 125 shares of capital stock of the Fabre Company, it was not essential that the defendant showed tender or payment into court of the said stock, and he should be relieved from such condition. The first 14 findings of fact are approved. The 15th finding of fact is amended by striking out the words " was obliged to resign and," and by striking out the words beginning " for the period," and as so amended is approved. The 16th finding is amended so as to insert after the word " Company " the words " 15th day of March, 1915," and as so amended is approved. The 17th finding is disapproved, and in place thereof there is found that " Any default in the performance by the defendant of the agreement annexed to the complaint marked Exhibit A that could arise from his resignation as secretary of said corporation on December 26, 1914, was waived by the said Fabre, and the said Fabre failed to perform said agreement and committed a breach thereof." The 19th finding may be stricken out as

superfluous. The parties are requested to submit to the court within 10 days proposed conclusions of law from the findings, and when these shall have been passed upon and made by the court the judgment will be affirmed, but without costs to either party.

MILLS, RICH and PUTNAM, JJ., concurred.

This case was argued December 8, 1916. Mr. Justice CARR, then a member of this court, sat with the court on that day. On March 1, 1917, Mr. Justice BLACKMAR became a member of this court, in place of Mr. Justice CARR, who was temporarily relieved. Mr. Justice CARR never resumed his duties as a member of this court up to the time of his death, and consequently took no part in this decision.

Judgment affirmed, without costs. The parties are requested to submit to the court, within ten days, proposed conclusions of law.