CITY OF SYRACUSE, Respondent, *v.* DALE ENGINEERING COMPANY and Another, Appellants.   (Actions Nos. 1 and 2.)

Fourth Department, November 5, 1931.

*Hiscock, Williams & Cowie* [*Daniel Scanlon* of counsel], for the appellants.

*Frank P. Malpass, Corporation Counsel* [*H. Duane Bruce* of counsel], for the respondent.

CROSBY, J. Defendant Dale Engineering Company was the successful bidder for a contract for resurfacing, with asphalt over brick, a portion of Genesee street in Syracuse. It gave the city a bond to secure its faithful performance of the contract. At the completion of the work this defendant gave the city a so-called maintenance bond as security that the pavement would remain in good repair for a period of five years. The latter bond was given to enable this defendant to draw the last fifteen per cent of the contract price which, otherwise, pursuant to the contract, would have been retained by the city for the five-year period. The city paid the full contract price, including pay for the extra work done by defendant pursuant to the order of the city's engineer, and it is undisputed that the pavement went to pieces rather badly within a few months.

The defendant National Surety Company is the surety on both the faithful performance bond and the maintenance bond given by the Dale Engineering Company and recovery has been had by the city against both defendants on both bonds.

We have two actions here, for the reason that the contract was let for resurfacing a stretch of street along part of which were the tracks of a street car company, and some practical reason suggested the advisability of letting the job in two separate contracts. The same questions are involved in both actions.

Appellants raise the question whether, in any case, the plaintiff could recover on both bonds, and contend that plaintiff, having accepted the pavement and having paid for it, is confined to such damages as it may recover on the bond given and accepted for the purpose of securing maintenance. This question need not now be decided. At any future trial, the verdict, if any, obtained by plaintiff, and the judgment entered thereon, can be in such form as to enable any court to which the matter may come to determine easily the assessment of damages relating to each bond.

The important question in the case relates to the defense which was pleaded but which defendants were refused permission to prove at the trial. That defense was, in substance, that under the terms of the contract, plaintiff retained entire control over the building of the pavement, both as to work and materials, and that plaintiff, over the protest of defendant contractor, compelled defendant contractor to use materials destructive of the asphalt, after being given warning of what the result would be.

The contract is not printed in the record, but, from the portions quoted in the respective briefs, we learn that the resurfacing material was to be of asphalt. When the work was completed the surface was found to be so slippery as to be dangerous to traffic.

Plaintiff made the claim that defendant contractor had not properly applied a surface coat of grit and said defendant made the claim that it was compelled by plaintiff, under the terms of the contract, to apply the surface coat in cold, rainy weather under conditions which made it impossible for defendant to make the grit adhere to the asphalt. The controversy was culminated by the plaintiff's engineer giving to defendant a so-called extra-work order to apply a coat of Tarvia to the surface of asphalt. For the performance of this extra-work order plaintiff paid defendant the contract price of cost plus fifteen per cent. Defendant alleged and attempted to prove that it knew that, because of some chemical reaction, Tarvia would destroy the asphalt, that it so informed plaintiff, and that it finally applied the Tarvia under protest and under compulsion of the extra-work order.

Let us turn now to some of the stipulations of the contract.

Paragraph B provides that "it is further agreed * * * that the City Engineer shall * * * decide upon the amount, quality * * * and fitness of the several kinds of work and materials * * * and upon all questions which may arise relative to the fulfillment of the contract, * * * and his * * * decisions shall be final and conclusive," etc.

Paragraph F provides that "it is further agreed that the said Engineer may make alterations in [various things] or material of the work * * * or any part thereof, either before or after the commencement of construction." This paragraph further provides, in effect, that if, by reason of such changes, the work, under the contract, is lessened, the contractor shall have no pay for work thus dispensed with, but, if increased, he shall be paid actual reasonable cost plus fifteen per cent.

Paragraph M provides that "The contractor agrees that he will perform such extra work as the Engineer may order in writing, but will not perform any extra work unless so ordered."

With these provisions in the contract, and binding on defendant, the question is whether or not it should have been permitted to make the defense pleaded. That counsel for plaintiff anticipated such defense and claimed to be ready to meet it is shown by this remark in his opening to the jury: "I know that there is going to be the question raised with reference to the effect of the Tarvia that was put on this pavement. Now, if that becomes an issue in this case, we will be prepared to show you that Tarvia — the Tarvia coat didn't in any way harm this paving. * * * In any event, even if it had, the Dale Engineering Company put it on. The Dale Engineering Company guaranteed it * * * after they had put it on." The last remark of counsel suggested

the theory on which the case was tried and submitted to the jury, namely, that, although every specification of the contract, as to work and materials, was under the absolute control of plaintiff, although it could change every specification at will at any time and if a dispute arose plaintiff's engineer could decide every question, without the contractor having a right to say a word about it, although the engineer could change the specifications and compel the contractor to build the pavement of mud or ashes, yet, no matter how disastrous the result, the plaintiff could exact the last ounce of flesh under the bond. The city claimed the right to supervise everything, to reject everything, to decide everything, then to approve the work and pay for it in full, then exact bonds to secure it against the results of its own mistakes of judgment, and then recover on the bonds. The plaintiff's engineer, at one time, must have doubted the justice of this theory, for when testifying to a conversation he had with defendant's president, when the plan of applying Tarvia was first suggested by him, he said: " I suggested the application of a tar seal coat * * * and I emphasized * * * that we could, in no way, apply anything to that street or do anything to it whatsoever without his absolute approval. * * * I said to Mr. Collins [defendant's president] that he would have the obligation to maintain this street for five years from the date of the final acceptance and that we could not recommend or that we would not recommend, nor do anything to the street which might, in any way, interfere with that maintenance requirement."

Even the court, at first, doubted the correctness of the harsh theory which it later adopted, for when the issue as to responsibility for the application of Tarvia first arose at the trial, the court said: " Isn't the real question in the case whether or not the City *directed* these parties to put it [Tarvia] on or whether the defendant and the City *agreed* to put it on and try and save the street? " And a little later in the trial, when defendant's counsel tried to get the plaintiff's engineer, on cross-examination, to admit that he knew that Tarvia would destroy the asphalt, the court said: " That will be part of your [defendant's] case [defense] won't it? "

However, as the trial went on the court adopted the theory that the defendant contractor was compelled to respect every dictate of plaintiff's engineer, whether it related to interpretation of the specifications, or to changes thereof, and at the same time was to be solely liable for any unfortunate results that might follow implicit obedience. A simple sense of justice would suggest that so much autocratic authority ought to go hand and hand with a little responsibility.

The irony of the situation appears more clearly in the light of

what plaintiff claimed was the trouble with the asphalt. Having taken and analyzed samples of the asphalt the plaintiff proved by experts that it was loose and spongy, had too many air spaces in it, evidently due to lack of proper compression. In ordinary vernacular it was not rolled down hard enough. It so happens that the only provision in the contract dealing with compression is one which provides that the asphalt should be rolled down "until a compression is obtained which is satisfactory to the Engineer." The engineer and his inspectors were on the job all the time. What would have happened had defendant insisted on operating his roller over the asphalt after being told that he had accomplished a degree of compression which was "satisfactory to the Engineer?" Defendant is in an intolerably awkward position where it is punished alike for obedience or disobedience. Although defendant is compelled to compress the pavement with no specification in the contract to guide it excepting to compress until the engineer is satisfied, although defendant compresses according to the engineer's dictate, and although the principal fault found with the asphalt is that it was soft and spongy and apparently not sufficiently compressed, yet defendant is precluded from showing that the spongy condition complained of is due to the Tarvia which defendant applied under protest after telling the engineer the damage it would do. When the court, during a colloquy between court and counsel, said that the plaintiff's engineer "had no right * * * to interfere with the contractor," he meant, as the record at that point clearly shows, that while the engineer had the legal right to interfere with, and dictate, the contractor's every movement, his interference furnished no protection to the contractor on its bonds. The court stated that it was bound by the rule in the case of *Cameron-Hawn Realty Co.* v. *City of Albany* (207 N. Y. 377). There the specifications for the building of a road were strictly followed by plaintiff, who, in its contract, agreed not only to build the road according to those specifications but to maintain the road, so built, for a period of years. The road having deteriorated within the prescribed period the contractor was held liable for its maintenance. The reason for the decision in that case is perfectly simple. The contractor had a set of specifications that he could and did rely upon, and that were followed to the letter. The contractor could tell, as well as the city, whether a road built according to those specifications, would last for the required period, and when, for a consideration paid, it undertook (1) to build the road according to those specifications, and (2) to maintain, for a period, the road so built, the latter undertaking was as binding as the first. The instant case is not much like the Albany case.

Here we have specifications none of which defendant is at liberty to rely on or to follow. Every one is subject to any kind of arbitrary change by the plaintiff. Indeed the specification as to compression furnishes no standard for guidance other than the arbitrary dictate of the engineer, and defendant finds itself mainly criticized for insufficient compression. This case is not governed by the Albany case; it is governed, rather, by the doctrine laid down in a case cited and distinguished in the Albany case. The doctrine is that " In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." (*Patterson* v. *Meyerhofer*, 204 N. Y. 96.)

The judgments and orders in these two cases should be reversed on the law and a new trial granted, with costs to appellants to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

In each case: Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.