Desmond, Ch. J.
Plaintiff, a builder and seller of homes in Westchester County, brought this suit against the County Health Department to recover back $10,000 which plaintiff had deposited with the department as a guarantee of performance of plaintiff’s December, 1955 agreement with the department to do certain remedial work in connection with surface water drainage and as a guarantee of the septic tank installations on the properties, “ against failure of workmanship and construction, for the period of one year of continued normal use The theory of suit was not that plaintiff’s promise had in fact been fully performed but that the doing of the work had been made impossible by the refusal of the purchasers of the houses to let plaintiff enter on their lands. Plaintiff’s position is that its covenants, while in form running to the Health Commissioner, were primarily for the benefit of the houseowners and that, since the latter made execution impossible, the collateral fund must be returned to plaintiff. In other words, plaintiff relies on a rule of law that, when a third-party beneficiary refuses to accept the tendered benefits, the promisor is excused from performance (4 Corbin, Contracts, § 811, p. 237). For present purposes we will assume that the rule of Patterson v. Meyerhofer (204 N. Y. 96) applies to hindrance by one who is not a party but a third-party beneficiary. The county has successfully defended on the ground that plaintiff was not prevented by the property owners from carrying out its stipulations and that the property owners had never rejected the promised benefits. The Trial Justice sent those questions of fact to the jury and the jury answered them in favor of the defense. We think that the verdict was justified by the proof and that there were no errors at the trial.
*324 The situation which produced the contract in suit came about in late 1955 when defendant Health Commissioner filed, against 76 one-family homes built by plaintiff during the preceding two years, notices of violations consisting of alleged defective drainage and faulty septic tanks. Plaintiff had conveyed some, but not all, of these properties to its customers. There had been many complaints about the working of the surface and sanitary disposal systems. There had been flooding and seepage. It was important to all concerned that these matters be put to rights but, because of winter weather and of the necessity for making plans and surveys, the work could not be done immediately. Plaintiff, however, wished the violations removed so that it could convey good title to the (about a dozen) properties not yet deeded out by it. To protect all interests plaintiff and the Commissioner worked out the agreement sued upon. In substance, the Commissioner agreed to (and did) withdraw the notices of violations, and plaintiff: (1) agreed to have a survey and plan made by a competent engineer as to the surface drainage requirements and to carry out the engineer’s recommendations, and (2) guaranteed the septic tank installations “ against failure of workmanship and construction ’ ’ for one year of continued normal use. Plaintiff covenanted to, and did, put up $10,000 as assurance of performance.
Plaintiff hired its engineer and in due course received the latter’s report but, despite demands from the Health Department and the owners, never did the corrective work recommended by the engineer. Plaintiff’s only excuse for its nonfeasance is that the homeowners refused to allow plaintiff’s representatives to come onto their lands for inspection and remedial work. There is nothing in the agreement as to such consents but the necessity thereof must have been apparent to plaintiff. Plainly, it was not the county’s obligation to procure those easements. Yet plaintiff — or so the jury could have found — did nothing about it beyond sending out letters to the householders in August or September, 1956, several months after the signing of the agreement. Meanwhile, the residents had become embittered against plaintiff. There Was testimony by several homeowners that, after they had many times demanded of plaintiff that their septic tanks be corrected and after plaintiff had made some ineffectual efforts at correction, each owner had the work done at his own expense.
*325 We think the testimony above summarized set up a jury question as to whether plaintiff made reasonable efforts to get the consents and, if so, whether the houseowners by their refusals made performance impossible. The jury’s negative ansAvers were justified and we find no errors in the court’s charge to the jury. As to the denied request for an instruction that this agreement was for the benefit not of the Commissioner but of the landowners, the court had already clearly described the purpose and meaning of the contract.
There is before us no question as to what ultimate use or disposition is to be made of this fund. That will have to await future developments. Since there were questions of fact on tlris record as to how much it will cost to do the work, plaintiff was not entitled to the return of any amount.
The judgment should be affirmed, with costs.