LAMA HOLDING COMPANY, Rasha Investments N.V., and Rana Investments, Ltd., Plaintiffs,

v.

SHEARMAN & STERLING, Bankers Trust Company, Defendants.

No. 89 Civ. 2639 (KTD).

United States District Court, S.D. New York.

Jan. 10, 1991.

Wachtell, Manheim & Grouf, New York City (Robert Braunschweig, Richard Raymond, of counsel), Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C. (George

**160**

R. Kucik, David T. Dekker, of counsel), for plaintiffs.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Leon Silverman, Bonnie Kayatta Steingart, William C. Viets, of counsel), for defendant Shearman & Sterling.

Moses & Singer, New York City (David B. Eizenman, Michael S. Zachary, of counsel), for defendant Bankers Trust Co.

## MEMORANDUM & ORDER

### KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Lama Holding Company ("Lama") and its foreign parents, Rasha Investments N.V. ("Rasha") and Rana Investments, Ltd. ("Rana"), bring this diversity action against defendants Shearman & Sterling and Bankers Trust Company ("Bankers Trust") alleging, *inter alia*, professional malpractice, breach of fiduciary duty, negligent misrepresentation, and breach of contract. The alleged wrongdoings arise from circumstances surrounding Lama's sale of stock in Smith Barney Inc. ("Smith Barney") to Primerica Corporation ("Primerica") pursuant to a merger agreement between Smith Barney and Primerica.[1] Shearman & Sterling and Bankers Trust now move pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) to dismiss the remaining counts in the complaint.

## FACTS

Lama, Rana, and Rasha were formed in 1982 to facilitate a group of foreign investors' purchase of 24.9% of Smith Barney stock. Shearman & Sterling, a partnership organized under the laws of New York, created Lama, a domestic United States corporation, and Rana and Rasha, its foreign parents, as a "General Utilities Structure"[2] (the "Structure") whereby the foreign investors would be able to take advantage of the then existing tax code. Lama is a Delaware corporation with no actual place of business in the United States. Rana is a corporation organized under the laws of the British Virgin Islands and also has no place of business in the United States. Rasha is a Netherlands Antilles corporation with no place of business in the United States. Lama was owned 33⅓% by Rasha and 66⅔% by Rana. Rasha in turn was owned in whole by Rana. This Structure eliminated United States withholding taxes on Smith Barney dividends issued to the foreign investors by paying them to Lama, a domestic corporation, in accordance with the General Utilities Doctrine. I.R.C. § 337 (1954). In 1982, when the Structure was organized, payment of United States' taxes on any profit from the resale of the stock would also be eliminated by liquidating Lama and distributing the proceeds to its foreign parents, as also allowed under the General Utilities Doctrine. *Id.*

By an agreement dated October 15, 1986, and an amendment thereto dated November 9, 1986, Bankers Trust was retained by Rana as its exclusive agent in the sale of the Smith Barney stock. Exhibit to Bankers Trust Answer and Counter–Claim. By the terms of the agreement, Bankers Trust was to seek out a prospective purchaser and set up the transaction to achieve optimum return for Lama, Rana, and Rasha. In return, Bankers Trust was to receive 0.7% of the total received on the sale of the stock as a commission. The agreement further provided that English law would govern.

---

**1.** The claims against defendants Smith Barney, its former Chairman of the Board, John Orb, and its former president, George Vonder Linden, as alleged in counts seven through twelve of the complaint, had previously been dismissed by me pursuant to Fed.R.Civ.P. 12(b)(6) by memorandum decision dated December 21, 1989.

**2.** The General Utilities Doctrine, partially codified as § 337 of the Internal Revenue Code of 1954, was an exemption from United States income tax which allowed a domestic corporation not to recognize a taxable gain from the sale of its assets if the sale proceeds were distributed to the corporation's shareholders by means of a liquidating distribution within twelve months after adoption of a plan of liquidation. Complaint ¶ 19. Shearman & Sterling created a structure to take advantage of this law.

Without first consulting either Shearman & Sterling or Bankers Trust, on May 19, 1987 Lama, Rana, and Rasha executed an agreement with Smith Barney which required the plaintiffs to sell their Smith Barney shares to Primerica. This was done in the manner originally contemplated by the Structure, but the law had been changed and the desired benefits were no longer available. Although Lama, Rana, and Rasha realized a profit of approximately one hundred million dollars on the sale, they were also required to pay in excess of thirty-three million dollars in taxes. Upon the consummation of the sale, Bankers Trust requested payment of their fee. Lama, Rana, and Rasha refused to pay the full amount of $1,147,319. An amount of $604,000 was eventually paid.

Lama, Rana, and Rasha allege that Shearman & Sterling and Bankers Trust had a duty to inform of changes in the law and did not do so, thereby causing Lama, Rana, and Rasha to incur an unduly burdensome tax liability.

## DISCUSSION

### A.

Shearman & Sterling moves to dismiss this action for failure to state a claim upon which relief can be granted and for a judgment on the pleadings. Fed.R.Civ.P. 12(b)(6) and 12(c). Under Fed.R.Civ.P. 12(b)(6) and 12(c) Shearman & Sterling claims that Lama, Rana, and Rasha plead insufficient facts to state a claim. I disagree. The complaint must be viewed in the light most favorable to the complainant and the factual allegations of the complaint taken as true. *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). These pleadings are replete with facts sufficient to withstand this motion to dismiss.

■ For example, Lama, Rana, and Rasha allege that a specific inquiry was made of Shearman & Sterling in August or September of 1986 as to the possible effects on plaintiffs' interests of a tax bill then under consideration by Congress. Complaint ¶ 45. A partner at Shearman & Sterling allegedly replied that there were no significant tax changes enacted as of that time, "but that the firm would inform Plaintiffs if any significant amendments to the United States tax laws were enacted." *Id.* If in fact such a specific commitment was made which was later handled in a negligent manner, liability may arise on that basis. In attorney-client agreements there may be liability "when there [is] a promise to perform and no subsequent performance, or when the attorney has explicitly undertaken to discharge a specific task and then failed to do so." *Saveca v. Reilly*, 111 A.D.2d 493, 494–95, 488 N.Y.S.2d 876, 878 (3d Dep't 1985). I find the pleadings sufficient on claims for breach and that questions of what, if anything, was said, and the extent to which injury was suffered thereby are questions to be resolved by a jury.

Shearman & Sterling also contends that there was no breach of a duty to Lama, Rana, and Rasha because the 1986 amendments had no impact on the Smith Barney investment. Shearman & Sterling believes that it can show that the Structure was intended solely to avoid taxes on dividends. This contention plainly raises issues of fact of the matter. Lama, Rana, and Rasha explicitly allege in the complaint that the investment was structured to minimize tax liability for dividend payments *and* for subsequent resale. Complaint ¶ 18–20. Taking the allegations of the complaint as true, the change in law restricted the manner in which their stocks could be disposed of. This obviously did have an impact on the investment. Thus, the pleadings are sufficient to state the causes of action for negligent misrepresentation, breach of fiduciary duty, and professional malpractice.

■ Shearman & Sterling also contends, that as a matter of law, it cannot be held accountable for proximately causing the losses incurred by Lama, Rana, and Rasha. In order to establish that Shearman & Sterling's acts and omissions were the proximate cause of the alleged damages, Lama, Rana, and Rasha must establish that they would not have entered into the transaction but for Shearman & Sterling's negligent

failure to reveal changes in the tax laws, and that this failure proximately caused damage to the plaintiffs. *See, Quintel Corp. v. Citibank,* 606 F.Supp. 898, 912 (S.D.N.Y.1985) (to establish proximate cause, client must show that he would not have entered into the transaction if attorney had properly investigated the transaction and that this failure damaged the client). In this case, Lama, Rana, and Rasha allege that had they known of the tax law change, they would not have structured the sale of their Smith Barney holdings in the manner which they did. They further allege that the structure of the deal caused them to incur tax liability in excess of thirty-three million dollars when taxes could have been avoided entirely. These allegations are sufficient to withstand the instant motion.

 Shearman & Sterling next maintains that even if there was a duty to keep Lama, Rana, and Rasha informed, their independent undertakings along with actions taken by Smith Barney and Bankers Trust constituted intervening events which were the proximate cause of the injuries. When the acts of a third person intervene between defendant's conduct and plaintiffs' injury, the causal connection is not automatically severed. *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 169 (1980). Liability then turns on whether the intervening act is a normal or foreseeable consequence of the situation created by defendant's negligence. An unforeseeable or extraordinary intervening act may well break the causal nexus. Questions as to what is normal and foreseeable are generally for the finder of fact to resolve. *Id.* Even if a subsequent act was either tortious or criminal, a negligent defendant can be insulated from liability only if that act was not reasonably foreseeable. *Cullen v. BMW of N. Am.,* 691 F.2d 1097, 1101 (2d Cir.1982), *cert. denied* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983). Therefore, I need not address the merits at this

juncture because sufficient facts were alleged to withstand this motion.

Although Lama, Rana, and Rasha may have acted hastily in committing to the sale of the stock, that does not defeat their claim at this stage. *Merced v. AutoPak Co.,* 533 F.2d 71, 80 (2d Cir.1976) (issue of contributory negligence is almost exclusively for the jury). Lama, Rana, and Rasha allegedly suffered a harm. That harm was a foreseeable consequence of Shearman & Sterling's alleged acts and omissions, namely, committing themselves to a sale which would be subject to tax. That a future sale of stock of this size may require secrecy and fast decision-making is obviously foreseeable.

Likewise, although Bankers Trust might have been negligent in advising Lama, Rana, and Rasha or Smith Barney might have acted fraudulently in encouraging a secretive deal in the time schedule which they did, that does not exculpate Shearman & Sterling at this stage of the proceedings. At this point, it is improper as a matter of law to rule on whether their actions and other events were unforeseeable.[3] Moreover, that Bankers Trust or Smith Barney may be more at fault than Shearman & Sterling does not relieve Shearman & Sterling of liability, because they all might be jointly and severally liable.

Shearman & Sterling sets forth the proposition that where the actual cause of injury is not in dispute, the issue of proximate cause is for the court to determine, relying on *Caraballo v. United States,* 830 F.2d 19 (2d Cir.1987). In that case, a thirty-nine year old plaintiff's reckless conduct in diving off a rotten pier into two to three feet of water was held as a matter of law the sole proximate cause of his broken neck. In stating that it was not the government's failure to post signs or its failure to adequately patrol the area that caused plaintiff's injury, the court emphasized the age and swimming experience of the plaintiff as well as the obviousness of the risks.

An analogy of this case with the suit at hand could not be more misplaced. I will

---

**3.** Furthermore, as a matter of procedure, plaintiffs are free to plead alternative and inconsistent claims in their complaint. Fed.R.Civ.P. 8(e)(2).

not hold as a matter of law that relying on the advice of a professional law firm is comparable to diving from a rotten pier into shallow water. The case at bar involves numerous parties and complex issues of tax law. The pleading requirements were adequately met and the action cannot be disposed of as expeditiously as where the cause of a physical injury is clearly known.

Finally, Shearman & Sterling argues that because Lama, Rana and Rasha could have arranged a tax-free sale of their stock within the Structure established by Shearman & Sterling even after the tax law changed, no liability should attach. This argument is nonsensical. Lama, Rana, and Rasha's suit seeks liability for an alleged failure to inform, not for misfeasance in the creation of the structure. The fact that options existed under the Structure which would allow an avoidance of tax exposure upon a sale of the stock does not exculpate Shearman & Sterling.

### B.

■ Bankers Trust was retained as Lama, Rana and Rasha's "exclusive agent, financial advisor, and sales representative for disposition of [their] Smith Barney investment." Complaint ¶¶ 70, 88, 98. As alleged in the complaint, Bankers Trust was obligated under the Autumn 1986 Agreement to "*inter alia*, (a) create and evaluate optional methods for disposing of the Smith Barney Investment, and recommend the most remunerative methods to Plaintiffs, (b) structure the prospective disposition so as to maximize Plaintiffs' net financial return, and (c) locate a suitable buyer and negotiate the terms of sale on Plaintiffs' behalf." Complaint ¶ 76. The agreement further provided that Bankers Trust would work jointly on the sale with Smith Barney, although its primary responsibility would be to Lama, Rana, and Rasha.

Although the complaint against Bankers Trust is framed in terms of negligent misrepresentation, breach of fiduciary duty and breach of contract, the claim is essentially for the alleged failure of Bankers Trust to alert Lama, Rana, and Rasha to the change in the tax law and the necessity that the sale be structured accordingly. This position presupposes a generalized obligation on the part of Bankers Trust to pass along information regarding "*potential* liability for United States income tax and *all issues* of timing and sale methodology that *might* materially affect that liability." Complaint ¶ 77 (emphasis added). Such alleged duties are too amorphous and ill-defined until put in the context of a specific transaction.

As properly contended by Lama, Rana, and Rasha, the "language of a business contract must be construed in light of what a businessman would reasonably expect to give or receive." *Merill Lynch Commodities, Inc. v. Richal Shipping Corp.*, 581 F.Supp. 933, 939 (S.D.N.Y.1984). British law is in accord on this point. *See Liverpool City Council v. Irwin*, 1977 A.C. 239, 258 (1976) (Lord Cross) (implied terms in contract must not be merely reasonable but must be necessary to give business efficacy to the contract).

In this case a businessman could reasonably expect that the instant agreement established a relationship in which the parties would work together to consummate a sale of the Lama holdings. As "exclusive agent" for the sale of the Smith Barney stock, Bankers Trust would not expect the principal to independently negotiate and commit to a sale. Advice on the structure of a sale is not given in a vacuum, but in reference to a specific transaction. This contract does not commit Bankers Trust to evaluate every possible tax and financial issue prior to the consideration of a specific transaction. Since the agreement is not ambiguous on this point, this determination is made as a matter of law. *See, Amusement Business Underwriters v. American Int'l Group*, 66 N.Y.2d 878, 489 N.E.2d 729, 498 N.Y.S.2d 760 (1985) (term of contract decided as a matter of law); *Property Choice Ltd. v. Fronda*, (Transcript:Association) (Court of Appeals, Civil Division) (12 July 1990) (term of contract decided as a matter of law).

Lama, Rana, and Rasha point to annual reports, tombstone ads, and company bro-

**164**

chures promulgated by Bankers Trust as evidence that Bankers Trust was in the business of giving highly sophisticated financial and tax advice. In those materials it advertized its role as the exclusive agent/financial advisor in the sale of the Lama holdings. This evidence was produced in an attempt to show that Bankers Trust should be liable on the basis of after the fact representations by Bankers Trust. I disagree. These items are irrelevant given the admission by Lama, Rana, and Rasha that after entering the agency contract, they never consulted Bankers Trust until the transaction was complete.

The contractual agreement did not create the duty alleged by Lama, Rana, and Rasha, thus there can be no cause of action for breach of contract. *See, Patterson v. Meyerhofer*, 204 N.Y. 96, 97 N.E. 472 (1912) (agency relationship governed by law of contracts); *Diversified Corporate Services, Ltd. v. Battey and Battey*, (Transcript:Association) (Court of Appeal, Civil Division) (9 July 1980) (agency relationship governed by law of contracts). Likewise, since the agency agreement did not encompass any alleged fiduciary duty, there can be no action for breach of fiduciary duty or negligent misrepresentation. *See, e.g., Neumann v. Metropolitan Medical Group*, 153 A.D.2d 885, 545 N.Y.S.2d 590 (2d Dep't 1989) (where nothing in the contract expressly or inferentially required agent to perform particular acts, there could be no cause of action for breach of fiduciary duty for failure to perform those acts); *Praet v. H.G. Poland, Ltd.*, 1 Lloyd's Rep. 566 (1962) (agent must act adversely to principal's interest to state a claim for breach of fiduciary duty, otherwise the principal's only possible remedy is in damages for breach of contract).

For the foregoing reasons the motion to dismiss Bankers Trust is granted. Shearman & Sterling's motion to dismiss is denied.

SO ORDERED.